JAMES PAT McREYNOLDS, Plaintiff and Respondent, *v.*
JAMES McREYNOLDS, ANNA MARE McREYNOLDS, et
al., Defendants and Appellants.

No. 10952.
Submitted April 6, 1966. Decided May 20, 1966.
414 P.2d 531.

James H. Morrow, Jr. (argued), Bozeman, Donald A. Nash (argued), Bozeman, for appellants.

Holter & Heath, Bozeman, Robert M. Holter (argued), Bozeman, Arthur F. Thompson (argued), Redwood City, Cal., for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment holding the plaintiff to be the owner in fee simple absolute, without exception or res-

ervation, of a certain section of land, and awarding to the plaintiff the sum of $890.00 with interest.

All of the parties concerned with this lawsuit are related and all have the same last name. The plaintiff, James Pat McReynolds, is the son of defendants, James S. McReynolds and Anna Marie McReynolds, husband and wife. The defendant, Jennie McReynolds, is the mother of James S. McReynolds and the grandmother of the plaintiff. James G. McReynolds, husband of Jennie, father of James S. and grandfather of the plaintiff, died in September, 1961, two years before this lawsuit was filed. His estate has been probated.

On January 29, 1953, James S. and Anna Marie McReynolds, defendants, who at that time owned the section of land in dispute, conveyed it to James G. McReynolds, since deceased. On the same day James G. McReynolds and Jennie McReynolds, defendant, conveyed the land back to James S. and Anna Marie McReynolds as joint tenants. This section of land was then conveyed by James S. and Anna Marie McReynolds to the plaintiff, James Pat McReynolds, also on January 29, 1953. All of these conveyances were by warranty deed. All of these deeds were subsequently recorded on February 27, 1953. The purpose of executing these deeds at this time was to avoid the expense of probate.

On February 24, 1953, James G. McReynolds and defendant, Jennie McReynolds, executed joint and mutual wills and a joint tenancy statement. On the same day the defendants, James S. and Anna Marie McReynolds, also executed joint and mutual wills and a joint tenancy statement. All of these instruments the deeds, the wills and the joint tenancy statements, were prepared by Howard M. Lewis, the family attorney, who is now deceased.

The defendants contend that the wills, the joint tenancy statements, and certain letters the defendants received from their attorney show that the deed to plaintiff was not intended to be an absolute deed without any rights in the defendants.

It is their belief that the various instruments create the following interests in this section of land: A life estate in James G. McReynolds and Jennie McReynolds, as joint tenants, followed by a life estate in James S. McReynolds and Anna Marie McReynolds, as joint tenants, with the remainder in fee simple to the plaintiff, James Pat McReynolds.

This contention of the defendants raises the broad issue of whether a deed, executed and delivered, may be modified or varied by subsequently executed instruments or statements, which are not deeds and which are subject to revocation at any time. We shall discuss this broad issue, but in passing note that appellant's brief is almost impossible to follow in relating the argument to the issues.

A grant of real property is presumed to be intended to pass a fee simple title, unless it appears from the grant that a lesser estate was intended. (R.C.M.1947, § 67-1608.) A grant of real property is conclusive against the grantor and everyone claiming under him, except one who in good faith and for consideration acquires a title or lien that is first duly recorded. (R.C.M. 1947, § 67-1610.) Unless the grant is by a public officer or contains a reservation it is to be interpreted in favor of the grantee. (R.C.M.1947, § 67-1518.)

In considering the allegations of the defendants it should be noted at the outset that Jennie McReynolds never owned the land as a joint tenant with her husband James G. McReynolds. The deed of January 29, 1953, from James S. McReynolds and Anna Marie McReynolds conveyed the land to James G. McReynolds only, not to him and his wife as joint tenants. In this state the legislature has defined a joint tenancy to be one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy. (R.C.M. 1947, § 67-308.) The deed to James G. McReynolds was not to several persons, nor was it declared to be a joint tenancy. Therefore Jennie McReynolds never owned the property as a

joint tenant with James G. McReynolds. The deed to James G. was not in compliance with the procedure, set forth in section 67-308, by which a joint tenancy may be created.

In support of their claim that the deeds executed on January 29, 1953, did not create an absolute fee in the plaintiff, the defendants cite In re Noyes' Estate, 40 Mont. 231, 106 P. 355. The Noyes case is not applicable to the facts before us. It held that a will may be modified by a nontestamentary document that the will refers to and incorporates by reference. It does not hold that unambiguous deeds may be modified by subsequently executed wills or other extrinsic instruments. A will is a revocable instrument which does not take effect until the death of its maker. It was be modified or revoked at any time prior to the testator's death and passes no interest until that time. A deed, on the other hand, passes a present interest. Once the deed is delivered the property passes from the grantor and he cannot reacquire it or any interest in it by a subsequently executed instrument. When the deeds of January 29, 1953, were delivered the property passed to the plaintiff, and the instruments subsequently executed by the defendants on February 24, 1953, did not affect or limit the plaintiff's ownership of the property. This court cannot effectuate a manifest intention where the grantor has omitted to use words in the deed required to give effect to such intention. The instrument must be construed as it is written. We can neither put words into a deed which are not there, nor put a construction on words directly contrary to their obvious meaning. (23 Am.Jur.2d, Deeds. § 161, pp. 209-210.)

The case of Wilson v. Davis, 110 Mont. 356, 103 P.2d 149, is pertinent here in regard to the admissibility of the joint and mutual wills and the joint tenancy statements executed by the defendants. Wilson v. Davis states that declarations made after the declarant ceased to have any interest in the property are not an admission against interest, but mere hearsay. This rule was set forth in the case of Dick v. King, 80 Mont. 40, 45,

257 P. 1022, 1024, as follows: "* * * the general rule is that declarations of a former owner of property made subsequent to his parting with his interest in the property are inadmissible, but this rule is subject to an exception in the case of conveyances shown to have been made with the purpose of defrauding the vendor's creditors." Under the rule of the Wilson case the joint tenancy statements and the joint and mutual wills were not admissible evidence, since at the time these statements were executed title to the property was no longer vested in the defendants. A declaration against interest in order to qualify as an exception to the hearsay rule must be made while the declarant has an interest in the property.

Further, section 93-401-27, subd. 4, requires that in order for a declaration against interest to be admissible the declarant must be deceased. Thus, even if the joint tenancy statements and joint and mutual wills were executed while title to the property still vested in the defendants and James G. McReynolds, only the statements of the latter would be admissible; he being the only deceased member of the group.

At this point, much is made in the defendants-appellants' brief of the effect of the remaining documents concerned with this case which are the letters of the McReynold's family attorney describing the entire transaction.

We need not be concerned with their admissibility as exhibits, because in fact the district judge did consider them. Our concern is whether such documents can vary the terms of a formal recorded deed as here. We hold that they may not, just as the district judge found.

However, even though counsel for appellants make much of these statements of the eminent deceased counsel for the family, one significant statement appears in defendants' Exhibit C, which is a letter from Howard M. Lewis, the attorney, to Mr. and Mrs. James G. McReynolds explaining the situation. Significantly, counsel said, "In my judgment, you must trust your children, and your grandchildren to be bound by your

wishes * * *." This, surely, recognizes that the deeds were completely effective as legal documents.

Just as the written statements of the defendants were not admissible to vary the terms of the deeds, neither are their oral statements. Where there is nothing ambiguous or uncertain in the terms of a deed it speaks for itself, and parol evidence tending to show a prior or contemporaneous oral agreement or tacit understanding with respect to the terms of the conveyance is inadmissible. Pinsky v. Sloat, 130 Cal.App. 2d 579, 279 P.2d 284.

The defendants' final contention concerning title to the property is that the decree of the district court in the probate of the estate of James G. McReynolds established title to the land in question. A perusal of the Montana case law shows this contention to be without merit. It is well-settled in this state that a district court sitting in probate is without power to try title between an estate and a person claiming adversely to it. State ex rel. Hills v. District Court, 118 Mont. 622, 169 P.2d 556; In re Day's Estate, 119 Mont. 547, 177 P.2d 862; In re Graff's Estate, 119 Mont. 311, 174 P.2d 216; Denke v. Wylie, 133 Mont. 424, 324 P.2d 403. What was said in In re Dolenty's Estate, 53 Mont. 33, 43, 161 P. 524, 529, applies equally here:

"A district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred. * * * we do not find any provision authorizing the court, in connection with the settlement of estates, to determine question of title between the estate and persons claiming adversely to it. These questions must be determined in proper proceedings instituted for that purpose."

The remaining issue concerns the award of $890 to the plaintiff. This amount represents the proceeds of the sale of certain calves belonging to the plaintiff. The calves were sold by de-

fendant, James S. McReynolds, with the plaintiff's consent in October of 1965. James S. McReynolds received the proceeds from this sale and has failed and refused to pay the $890.00 to the plaintiff.

It had been the practice for many years including 1963, for livestock belonging to other members of the McReynolds family to be intermingled and pastured together on the section of land owned by the plaintiff. And as good grazing practice indicated the livestock, including the cattle owned by the plaintiff, were moved to adjacent lands belonging to members of the McReynolds family. During the years prior thereto and including the year 1962, no pasture rentals were requested nor were any ever paid by the plaintiff to other members of the McReynolds family. Also during this period the plaintiff has never requested and never received any pasture rentals from any other member of the McReynolds family.

The defendant, James S. McReynolds, has since sought from plaintiff rentals for pasturing and caring for plaintiff's livestock. He holds the proceeds from the sale of plaintiff's calves as an offset against the claimed rentals.

The facts themselves show that the money received from the sale of plaintiff's calves belongs to him. The cattle of all the members of the McReynolds family had been pastured on lands owned by the various members of the family including the section owned by the plaintiff. Each family member then sold his own cattle for his own account without any payment of pasture rentals. If there was any implied agreement among the family members it was not to pay pasture rentals. No evidence was presented to show any change in the family policy as to pasture rentals; therefore we must allow the past transactions and conduct of the family members to control in this case.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON and DOYLE concur.