Argued and submitted January 14, affirmed March 30, 1981

## FALLON et al,
### *Appellants.*
*v.*
## HUMES et al,
### *Respondents.*

(No. 78-2979-E-2, CA 17392)

627 P2d 1

Thomas C. Howser, Ashland, argued the cause for appellants. With him on the briefs was Cottle, Howser & Cue, Ashland.

E. R. Bashaw, Medford, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Appealing plaintiffs appeal from the denial of a mandatory injunction requiring the individual defendants to remove a garage they built on a portion of the corner lot they own at the junction of Prospect and Roca Streets in Ashland. Plaintiffs allege that the garage was built too close to Prospect Street, and the present dispute centers around the precise location of the boundaries of that street. Plaintiffs assign error to the trial court's finding that they failed to establish that the City of Ashland was ever the owner of a right-of-way along the south side of Prospect Street for street and utility purposes and to the failure to find that the garage was constructed in violation of the applicable setback ordinance and therefore constituted, by ordinance, a public nuisance which defendants should be compelled to remove.

Certain aspects of the case are factually complex and and a sketch is appended as an aid to clarity. The original lot (ABMN) was part of "Block H of the Overlook Addition." Overlook Addition, as such, is not recorded in any official document nor, insofar as the record shows, was it ever formally platted.[1] A 1944 deed of "Block H" from the common grantors (Blantons) to plaintiff Howard makes reference to the Overlook Addition but the property in this and in subsequent deeds is fixed by a metes and bounds description and not by reference to any plat map. Howard testified that he did not rely on a plat map in purchasing the property.

Prospect Street (DFIK) runs east and west in front of defendants' house and dead ends directly east thereof. Prospect was paved in 1955 to a width of 33 feet. There is no sidewalk on either side of the street, and all municipal improvements (power poles, fire hydrants, water mains) are located within one foot of the curb line. Roca Street, an unpaved gravel road, runs north and south along the east side of defendants' lot. The setback distance from Roca was

---

[1] Plaintiffs produced what purported to be a plat of the Overlook Addition. Because of foundation problems this exhibit was excluded from evidence and plaintiffs do not assign error to its exclusion. We have not considered it in our review of the case.

also raised at trial, but the issue is not involved in this appeal.[2]

In 1976, defendants purchased the lot in question. The prior owner, Caswell, had obtained a variance to construct an open carport adjacent to the house. Defendants decided they would rather have an enclosed garage. They obtained plans and a building permit and contracted to have it built. According to their testimony, the city planning department told them that they did not need to apply for a new variance and approved the structure even though work was to commence more than one year after the granting of the initial variance, contrary to city ordinance. Prior to pouring the foundation, a city inspector checked the setback distance from Prospect Street and approved it.

When the foundation was poured, plaintiff Fallon, who lived across Roca Street from defendants, noticed that the garage was in apparent noncompliance with the setback ordinance which required a front yard of 20 feet, measured from the closest point on the garage to the "front lot line." Ashland Municipal Code, §§ 18.20.050(c); 18.08.840. The "front lot line" is defined as "the line separating the lot from the street * * * ." §§ 18.08.420. The code defines "street" as the entire right-of-way, both the traveled portion and that reserved for sidewalks and municipal improvements. § 18.08.670. Plaintiffs' position is that the City's right-of-way extends south of the curb line of Prospect Street and, although the garage is more than 20 feet from the curb line and the improvements near the curb, it is less than 20 feet from the dedicated right-of-way.

Plaintiffs (all neighbors of defendants) complained about the garage to the planning department, which notified defendants of their nonconformance and invited them to apply for a variance. Defendants did so and the variance was granted by the department. Plaintiffs appealed the grant of the variance to the city council, protesting that the garage was in nonconformance with the setback ordinance, was unsightly and obstructed visibility at

_____

[2] From the testimony of the surveyors at trial, the right-of-way for Roca Street was found to be five feet further east than any of the parties anticipated. The side of the garage was therefore 14 and 1/2 feet from the lot line, which, based on a 15 foot setback requirement, the trial court correctly found to be a *de minimis* violation.

the intersection. (There is no question that the structure complies with the city ordinance on visibility, and plaintiffs do not contend otherwise.) Ultimately, the city council disapproved the variance. Defendants did not contest the matter further.

In 1958, the City deeded to the landowners on the south side of Prospect Street a 12 foot wide strip of land (BCLM). The deed describes the parcel by metes and bounds and by reference to the "center line of Prospect Street." The conveyance leaves a rectangle of land (CDKL) approximately eight feet wide between the resulting north line (CL) of defendants' parcel and the south curb line of Prospect (DK).

The City was not a party to this lawsuit. Two city employes, the City Administrator and a surveyor in the engineering department, testified that the reason for this conveyance was not clear from public records. The Administrator stated that the current City position was that the City had no right-of-way by dedication and its rights stemmed solely from its prescriptive use (paving and improvements) along Prospect. The City was engaged in trying to persuade landowners in that area to dedicate land for a right-of-way. The surveyor stated that it was impossible to determine from survey records just where the "center line of Prospect" (*i.e.,* the right-of-way), lay and, thus, references to such a line in the deeds were of no help in locating the front line of defendants' lot.

Defendants' predecessor (Caswell) testified that he tried to locate his front line so he could build a fence along it. Measuring on the basis of his deed description and a pin he found at the rear of his property, he concluded his property line was within three feet of the curb. Howard (the common grantor of all four lots on the south side of Prospect in that block) testified that he believed his front lot line to be about eight feet from the curb. He stated he did not know how the City came to own that land; he merely assumed that it did. He further stated that he never intended to give any of his land to the City.

Plaintiffs explain the 1958 conveyance and the resulting right-of-way as follows: A standard quarter section measures a half-mile (2,640 feet) on a side. The City at some point discovered that the quarter section in this instance was in excess of 2,652 feet as a result of surveying

errors. When the Galey Addition (which lies to the north side of Prospect) was platted and recorded, the southernmost 25 feet were dedicated for street purposes. The deed descriptions for lots in the Galey Addition are tied to the north quarter-section line. The dedicated right-of-way commences 1,295 feet south of this line. Adding the 25 foot width of the right-of-way yields a figure of 1,320 feet, the precise depth of one-half of a standard quarter section. On the ground, the southernmost line of the Galey Addition dedication lies about a foot south of the center line (EJ) of the paved portion of Prospect.

Plaintiffs suggest that a similar dedication was intended with reference to the unplatted Overlook Addition. Reference in deed descriptions for lots in that area is made to the south quarter-section line and defendants' north line is tied to a point 1,295 feet north of that line. Plaintiffs argue that this fact evidences an intent to dedicate a 25 foot strip on the north edge of Overlook Addition for street purposes, similar to the dedication from the grantor who platted the Galey Addition. When the City discovered that the particular quarter section was 12 feet deeper than standard, plaintiffs contend, it must have concluded that it owned a right-of-way 62 feet wide, that it needed only 50 feet and so conveyed the excess 12 feet to the property owners on the south side of Prospect.

The trial court concluded that plaintiffs failed to clearly prove that the common grantor of the Overlook Addition ever intended to dedicate a 25 foot right-of-way along the north edge and therefore the City never owned the land it purported to convey by deed in 1958. We agree.

A dedication of a street right-of-way may be made either pursuant to statute by lawfully platting a subdivision (ORS ch 92) or, at common law, by implication from the surrounding circumstances. It is not contested that there is no statutorily dedicated right-of-way since Overlook Addition was never platted or approved and there is no recorded grant of such a right-of-way by any of the landowners on the south side of Prospect. A common law dedication rests on a theory of equitable estoppel and requires:

> "* * * *First,* a survey or other segregation of the land intended to be devoted to a public use; *second,* the making of a plat representing the division of the tract; and, *third,*

the sale of land so surveyed by reference to such plat. As a condition precedent to a common-law dedication, which is implied from the sale of lots by reference to a plat thereof, exhibited or improperly recorded, there must, in the absence of an acceptance, have been either a survey of the land, or some physical evidence upon the ground to indicate the location and extent of the easement intended by the donor to be devoted to the use of the public. * * *" *Nodine v. Union,* 42 Or 613, 617, 72 P 582 (1903).

The party relying on the existence of a dedication must prove the intent to dedicate by clear and convincing evidence. *Miller v. Roy W. Heinrich & Co.,* 257 Or 155, 158, 476 P2d 183 (1970). The sale of lots with reference to a plat indicates such an intent. *Id.*

In the present case, there is no evidence that any sales were made by the Blantons or Howard (the common grantors) with reference to any plat map. Howard specifically testified that he saw no such map prior to purchasing "Block H" and never intended to give any land to the City. Plaintiffs' interpretation of the situtation based on prior surveys and the deed calls fixing the north line of lots on the south side of Prospect at 1,295 feet north of the south quarter section line is consistent with such an intent, but we conclude it falls short of the "clear and convincing" proof necessary to establish that fact. The facts are also consistent with the interpretation that the common grantors were merely mistaken about the extent of their holdings or that they abandoned the scheme to plat and record the Overlook Addition, but neglected to change the deed descriptions accordingly. In any event, the only reliance by the City or members of the public was the paving of Prospect and installation of certain improvements near the curb. Such use does not estop the landowners to deny dedication of the unused 20 feet of land (BDKM) between the curb and the described north line of the lots prior to the 1958 conveyance by the City. For the same reason, plaintiffs' theory that the City owned the land by virtue of adverse user must fail. *Sweet et al. v. Irrigation Canal Co.,* 198 Or 166, 188-89, 254 P2d 700, 256 P2d 252 (1953).

It follows that defendants' garage does not violate the 20 foot setback requirement, and plaintiffs' request for an injunction was properly denied.

Affirmed.

SCHEDULE

$\overline{ABMN}$ = Record Boundary

$\overline{BCLM}$ = Parcel Deeded by City (1958)

$\overline{DK}$ = South Curb Line - Prospect St.

$\overline{CDKL}$ = Disputed Parcel

$\overline{EJ}$ = Center Line of Pavement

$\overline{FI}$ = North Curb Line - Prospect St.

$\overline{GH}$ = North Boundary of Right-of-Way-Dedicated (Galey Add'n)