No. 81-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN RE THE MARRIAGE OF:

ZELDA SANGRAY HILL,

Petitioner and Appellant,

and

ROBERT A. HILL,

Respondent and Respondent.

Appeal from:   District Court of the Eighth Judicial District,
               In and for the County of Cascade
               Honorable H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        Christensen and McLean, Stanford, Montana
        Jack M. McLean argued, Stanford, Montana

    For Respondent:

        Graybill, Ostrem, Warner and Crotty, Great Falls, Montana
        Leo Graybill, Jr. argued, Great Falls, Montana

                            Submitted:   January 12, 1982

                            Decided:       APR 15 1982

Filed: APR 15 1982

Thomas J. Kearney
                                   Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court, Eighth Judicial District, State of Montana, Cascade County, arising out of a dissolution of marriage. Appellant wife was granted a dissolution of marriage on October 21, 1976, with the question of disposition of property reserved. On December 17, 1980, a hearing on the disposition of property was held in the District Court. The trial judge entered judgment disposing of the marital assets, and from that judgment wife appeals.

The issues presented on appeal are:

1. Was there sufficient evidence for the District Court to find that respondent husband owned one-half interest as a tenant in common in the "Galloday Place"?

2. Was there sufficient evidence for the District Court to find that the property known as the "Richardson Place" had a fair market value of $160,000 as of the date of the dissolution of marriage?

3. Was there sufficient evidence for the District Court to find that the property known as the "Home Place" had a fair market value of $260,000 as of the date of dissolution of marriage?

4. Was there sufficient evidence for the District Court to conclude that the remainder interest which respondent received from his father's estate was a vested remainder subject to divestment?

5. Should a vested remainder interest be included in the marital estate for purposes of property distribution?

6. Was there sufficient evidence for the District Court to conclude that the property known as the "Woodbury

Place" should not be included in the marital estate?

7. Did the District Court err in deducting child support from the appellant's share of the marital assets when respondent failed to petition for child support?

Respondent and appellant were married in Geyser, Montana, on June 14, 1959. Three children were born as issue of the marriage, but their custody is not in dispute. The dissolution of the parties' marriage was granted October 21, 1976, with the disposition of property reserved.

Respondent is a farmer and cattle rancher. During most of the parties' seventeen-year marriage, they lived on a ranch near Raynesford, Montana, which respondent farms in conjunction with his mother, Anna Hill, and his brother LeRoy Hill. The ranch has always been a family operation.

Respondent inherited a one-fourth remainder interest in one-half of his parents' ranch pursuant to a decree of distribution entered on October 16, 1958, about eight months prior to the parties' marriage. This property existed in two separate parcels known as the Home Place and the Richardson Place. Respondent's brother resided on the Home Place which contains about 2,956 acres. Respondent and appellant resided on the Richardson Place which contains 1,199 acres. Respondent and his brother each worked the parcel of land on which he resided.

On July 25, 1963, respondent and his brother purchased, as tenants in common, about 795 acres of land known as the Galloday Place. The land was financed by a mortgage on all of the land owned by the Hills, including Anna and LeRoy Hill.

At the time of the dissolution respondent operated

the Galloday Place as his own property. Appellant testified that while LeRoy, the husband's brother, had a one-half interest in the Galloday Place, it was in order that one day the husband would have the Richardson and Galloday Places and his brother would have the Home Place. Appellant also testified that respondent's brother did not have anything to do with the Galloday Place but was helping pay for it so he could get the Home Place.

In addition, in 1972 the property was mortgaged to buy more land. At that time respondent's two sisters signed a quitclaim deed to their interests over to their mother. Respondent testified this was done as a convenience to the Federal Land Bank to obtain the loan and that the sisters still have their equitable interests coming to them. The mortgage of all the Hill lands was increased again when the brother purchased other lands.

This case was some four years in coming to trial. It was not until the present trial judge insisted and set time periods to ready the case for trial that it finally was tried. One of the problems at trial arose from an order of the court, issued November 14, 1980, shortening the time for response to appellant's interrogatories concerning the real property in which the husband claimed an interest and a request for a list of exhibits and permission to enter upon the property for inspection purposes. This order was not timely complied with, causing appellant problems at the trial. At trial, respondent introduced his 1976 income tax return into evidence, and appellant alleges she did not have time to inspect it. Appellant also alleges that because of the lateness of its submission, she could not properly

-4-

cross-examine respondent on the contents of the return.

Subsequently, appellant requested the District Court to take judicial notice of respondent's claimed one-half interest in 2,270 acres of land acquired in 1972 known as the Woodbury Place. However, no findings of fact or conclusions of law were made regarding this property.

Respondent did not petition for child support. The District Court, however, issued findings of fact and conclusions of law on the matter. The judgment entered on March 31, 1981, deducted $7,126 for child support payments from appellant's property award.

The District Court found appellant's share of the marital estate to be $30,432.51, less $7,126 for child support and $1,125 for appraisal.

The first issue is whether there was sufficient evidence for the District Court to find that the husband owned a one-half equitable interest in the property known as the Galloday Place. The Galloday Place was purchased in 1963 and recorded in the names of respondent and his brother as tenants in common. As previously noted, testimony indicated that the record owners of the Hill properties are not always the equitable owners. The respondent's sisters quit-claimed their remainder interest in certain properties to their mother to assist in getting a loan from the Federal Land Bank. While the respondent is the legal one-half owner of the property as a tenant in common, according to the appellant, he considered himself the owner of the entire property.

The Galloday Place consists of 795 acres. The Black Place, which was part of the original Galloday Place, con-

sisted of five acres. The respondent argues that while the Galloday Place was bought by him and his brother to be held in common ownership he does farm the property and has at times listed it in his financial statement. However, as previously noted, in this family ranch, operating much like a partnership, it was not uncommon when borrowing from a bank to include all the Hill family land which was to stand good for the loan. All the Hill lands were farmed together, and each place made a contribution whenever possible to the payment on the Federal Land Bank mortgage. Therefore, respondent argues, the trial court had reasonable evidence before it on which it could draw its conclusion.

The rule in Montana for our review of a property division of marital cases is whether the District Court acted arbitrarily, without employment of conscientious judgment or exceeded the bounds of reason in view of the circumstances. Kuntz v. Kuntz (1979), 181 Mont. 237, 593 P.2d 41, 36 St.Rep. 662.

On review, the court's findings do not appear to be arbitrary or beyond reason concerning this issue. The District Court's findings appear to be supported by substantial credible evidence, and the findings of the District Court concerning the Galloday Place are sustained.

Issues two and three, concerning the sufficiency of the evidence to support the District Court's findings on the value of the properties known as the Richardson Place and the Home Place, will be considered together.

The District Court found that the Richardson Place had a fair market value of $160,000 at the time of the dissolution and that the Home Place had a fair market value of

-6-

$260,000 at that time.  However, the court failed to set forth in its findings of fact how the net worth of the parties was determined, as required by Nunnally v. Nunnally (1981), ____ Mont. ___, 625 P.2d 1159, 38 St.Rep. 529.

The court found the fair market value of the Richardson Place was $160,000.  This value was based entirely upon the respondent's testimony of per acre valuation. Respondent testified as to the per acre value of hay and grazing land. However, no testimony was presented as to how many acres of crop, hay or grazing land there were on the Richardson Place or on the Home Place.  The only explanation that we can arrive at for the District Court's valuation is that it adopted the respondent's proposed findings of fact on these matters verbatim.

Appellant argues that in the distribution of property Hamilton v. Hamilton (1980), ____ Mont. ____, 607 P.2d 102, 37 St.Rep. 247, is controlling.  In Hamilton, Arabian horses were appraised in the property distribution without a finding as to the total number of horses in the marital estate. This Court held that the total number of horses was necessary to place a value on them. The situation is similar here for it appears that the District Court ignored the testimony of a competent court-appointed appraiser, who valued the property some $68,000 higher than the value given by the respondent.

Viewing the total record, we conclude that the trial court erred in its valuation of both the Richardson Place and the Home Place.  The court failed to consider the number of acres of each type of land which was used in the valuation.  While respondent's Exhibit B refers to 1,200 acres on

-7-

the Richardson Place, there is no reference to the acreage breakdown so we are unable to determine what part of the land was crop land, hay land, or grazing land. As a result, we conclude that the valuations of the Richardson Place and the Home Place are not supported by the evidence.

Respondent argues that his remainder interest in both the Richardson Place and the Home Place should not be included as a part of the marital estate and that their valuations are therefore not relevant. This contention is based on respondent's claim that his remainder interest in the Home Place and the Richardson Place is subject to divestment in the event that he dies before his mother. Respondent bases this contention on the wording of the will of his father, J. Elmer Hill. That contention disregards the decree of distribution in the estate of J. Elmer Hill, dated October 16, 1958, which in pertinent part provided:

> "IT IS HERE ADJUDGED AND DECREED, that . . . the residue of said Estate of J. Elmer Hill, . . . hereinafter particularly described. . . be and the same is hereby distributed as follows, to-wit:

> "Real estate: To Anna Mae Hill, for and during her lifetime, with full control, use, possession, proceeds, and income therefrom, and without liability for any injury, destruction, damage, loss or waste thereto, with remainder share and share alike to Robert A. Hill [respondent] . . .[description of Richardson Place and Home Place]."

The contentions of the respondent ignore the settled law in this state. Even prior to the enactment of the Uniform Probate Code, a decree of distribution is conclusive upon the rights of devisees under a will. As stated in In re Bell's Estate (1958), 134 Mont. 345, 350, 331 P.2d 517, 520:

> "A decree of distribution is conclusive upon

-8-

the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal. R.C.M. 1947, section 91-3902; In Re Estate of Murphy, supra [other cases cited]. A decree of distribution has the same force and effect as does a final judgment."

The respondent's remainder interest is correctly described in the decree of distribution and cannot be changed by a collateral attack in which the respondent suggests that the will required a different type of decree of distribution. We therefore conclude that the District Court's finding that respondent's remainder interest was a vested interest subject to divestment is not supported by the evidence.

The next issue is whether the vested remainder interest of respondent should be included in the marital estate for purposes of property distribution. At the time of the marriage dissolution on October 21, 1976, the respondent had a remainder interest with a present value, a property interest which will ripen into a full one-fourth interest in all of the land upon the death of his mother.

At least three jurisdictions, Kansas, Wisconsin and Kentucky, have held that a spouse's vested remainder interest in real property should be considered in the disposition of a marital estate. A similar problem was considered in the case of McCain v. McCain (1976), 219 Kan. 780, 549 P.2d 896. There, the court noted that the husband owned specific undivided future interests in two quarter sections of land. Neither of these would ripen into a possessory interest until the termination of the estate of the life tenant of each tract. Nonetheless, his interests were vested remainders which could be sold. They had present value. The court, speaking of a remainder interest subject to life

estate, said that it held in Woolums v. Simonsen (1974), 214
Kan. 722, 522 P.2d 1321:

> ". . . the appellant and her children have a
> remainder interest in real property subject
> to a life estate in the mother of the appel-
> lant. Considering the age of the appellant's
> mother, the probability that the appellant
> and her children will survive her mother. . .
> is a good prospect. Because of this prob-
> ability the appellant has a saleable property
> right of considerable present value . . .

> "Under the law of this state, the general
> rule is that any interest a person may have
> in property, vested or contingent, legal or
> equitable . . . may be levied upon and sold
> under execution. [Citing cases.] Another
> case holding that the interest of a remain-
> derman . . . is saleable is Markham v.
> Waterman, 105 Kan. 93, 181 P. 621." McCain,
> 549 P.2d at 900.

See also: Jordan v. Jordan (1969), 44 Wisc.2d 471, 171
N.W.2d 385; Rompf v. Rompf (Ky. 1968), 433 S.W.2d 879.

In addition, several other jurisdictions have reached
the same conclusions when considering other future interests
of marital estates. See, Trowbridge v. Trowbridge (1962),
16 Wisc.2d 176, 114 N.W.2d 129; Maxwell v. Maxwell (1921),
106 Neb. 689, 184 N.W. 227; Hughes v. Hughes (1975), 132
N.J.Super. 559, 334 A.2d 379.

Montana statute requires the District Court, in dis-
posing of property following a dissolution of marriage, to
"finally, equitably apportion between the parties the prop-
erty and assets belonging to either or both, however and
whenever acquired and whether the title thereto is in the
name of the husband or wife or both." Section 40-4-202,
MCA.

While the right to possession of a vested future
interest is postponed, it is still a property interest that
can be distributed. See sections 70-1-315 and 70-1-317, MCA.

We agree with the court in McCain, supra, where it found that since such vested interest could be sold or otherwise alienated, transferred or mortgaged, the property had a present value and should be included.

Respondent attempts to distinguish McCain because Kansas has not adopted the Uniform Marriage and Divorce Act. However, the Kansas statute on the division of marital property is similar to that of Montana:

> "The decree shall divide the real and per-
> sonal property of the parties, whether owned
> by either spouse prior to marriage, acquired
> by either spouse in the spouse's own right
> after marriage, or acquired by their joint
> efforts, in a just and reasonable manner
> . . ." Section 60-1610(d), Kansas Statutes
> Annotated.

We find that the District Court erred in not including respondent's vested remainder interest in the marital estate for the purpose of distribution.

The next issue is whether there was sufficient evidence for the District Court to conclude that the property known as the Woodbury Place should not be included in the marital estate.

We have previously noted in setting forth the facts in this case that one of the problems that arose during trial was respondent's failure to comply with the court's order to allow shorter time to respond to interrogatories. This included respondent's 1976 federal income tax return about which the appellant complained she did not have sufficient time to properly cross-examine or analyze. This return contained information about the Woodbury Place. In view of the fact that this case must be returned to the District Court for reconsideration of the assets of the marital estate, we direct that on reconsideration appellant

-11-

be allowed to pursue examination as to the Woodbury Place. We also note that this Court does not condone respondent's failure to comply with the District Court order or any other frustration of discovery. Owen v. F. A. Buttrey & Charles Revson (1981), ___ Mont. ___, 627 P.2d 1233, 38 St.Rep. 714.

The final issue is whether the court erred in deducting child support from appellant's share of the marital assets when respondent failed to petition for such support. Appellant left the family home in January 1973 and went to Great Falls where she attended a Vo-Tech school for eleven months. The record indicates that respondent paid for her tuition and expenses and that the children remained on the ranch with him during this period. Appellant returned to the family home on December 21, 1973, but left the ranch again and did not return until several months before the dissolution. During that time the children remained with respondent at the ranch.

The decree of dissolution, dated October 21, 1976, provides, among other things, that "custody, support and visitation of the minor children was reserved." Appellant in her complaint asked that the parties be granted "mutual" custody, and respondent alleges that the question of necessary child support and custody of the children was thereby placed in issue. The District Court concluded that, "the reasonable cost of support of the minor children of the parties from October 21, 1976, through their respective majorities, is $14,252. One-half of this sum, or '$7,126' is the responsibility of [appellant] to the support of the minor children from her share of the marital estate."

The court heard no evidence on the children's finan-

cial resources or standard of living before the dissolution or on the financial resources of the appellant. These factors must be considered in determining child support under section 40-4-204, MCA. We find, therefore, that the District Court's decision was not supported by evidence and constitutes an abuse of discretion. When the matter comes before the District Court on remand, these matters may be considered with proper testimony by both parties to arrive at an equitable solution.

The cause is remanded to the District Court with directions to comply with the provisions of this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices