No. 97-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 225

IN RE THE MARRIAGE OF

LINDA BEADLE,

Petitioner, Respondent and Cross-Appellant,

and

ANDY GEORGE BEADLE,

Respondent and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Phillips,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew Knierim; Christoffersen & Knierim, Glasgow, Montana


For Respondent:

Monte J. Boettger, Attorney at Law, Lewistown, Montana

For Amicus Curiae Bernadene Beadle:

Sol Lovas, Attorney at Law, Billings, Montana


Submitted on Briefs: May 28, 1998

Decided: September 9, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1 Appellant Andy George Beadle (Andy) appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the Seventeenth Judicial District Court, Phillips County, awarding Respondent Linda Beadle (Linda) $1,000 per month in maintenance. Linda cross-appeals from the District Court's order excluding Andy's trust interest from the marital estate. We affirm.**

**¶2 We review the following issues:**

**¶3 1. Did the District Court err in considering $1,000 per month income earned by Andy as trustee of his parents' trusts?**

¶4 2. **Did the District Court abuse its discretion in awarding Linda maintenance of $1,000 per month?**

¶5 3. **Did the District Court err in excluding Andy's trust interest from the marital estate?**

Factual and Procedural Background

¶6 Linda and Andy were married in 1965 and separated in April of 1995. The couple has two adult children and one minor child, Kayla, currently fifteen years old. Throughout their marriage, Linda and Andy resided in Saco, Montana, where they owned a home and business, Jake's Bar.

¶7 In 1989, Andy's parents, John G. Beadle (John) and Bernadene H. Beadle (Bernadene), established identical, revocable living trusts as part of their estate plan. John passed away in 1990. Pursuant to the couple's estate plan, the first $600,000 of John's estate was allocated to a tax-sheltered unified credit trust. Bernadene was the sole lifetime beneficiary of the trust and had the power to appoint by will the remainder of the trust among the couple's descendants. The trust provided that if Bernadene did not exercise the power to appoint, the trust would be distributed among each of John and Bernadene's five children, including Andy, upon her death. Andy and his brother, G. Brien Beadle, were appointed co-trustees of the John G. Beadle Revocable Trust. From 1990 to 1996, Andy and Brien each received $1,000 per month for their services as co-trustees.

¶8 In August of 1995, Linda petitioned to dissolve her marriage to Andy. Subsequently, she moved the District Court to compel discovery regarding the assets contained in the John G. Beadle Revocable Trust. Following an evidentiary hearing, the District Court held that the trust is a "vested remainder, subject to divesture" acquired by Andy during his marriage and, thus, part of the marital estate. The court granted Linda's motion to compel.

¶9 Linda subpoenaed Bernadene to provide information about her estate plan and the value of the John G. Beadle Revocable Trust. Bernadene moved to quash the subpoena. Bernadene presented the District Court with proof that she had executed a codicil to her will exercising her power of appointment to exclude Andy from receiving any trust proceeds. In an order filed December 4, 1996, the District Court

quashed the subpoena and overruled its prior order compelling discovery of the trust assets. The court held that "by reason of the divesture taking place, Andy no longer has any vested remainder interest in the John G. Beadle Revocable Trust. Unless the remainder interest is vested, it cannot be included in the marital estate. [Citation omitted.]" Despite this holding, Linda again subpoenaed Bernadene to testify concerning her assets and estate plans. The District Court refused to quash the subpoena, holding that Linda should be able to question Bernadene about whether she intended to disinherit Andy permanently.

¶10 The matter went to trial on February 20, 1997. Linda was 49 years old at the time of trial and had not received her high school degree or GED. During the marriage she was the primary caretaker of the household and children in addition to working approximately 40 hours per week at Jake's Bar, beginning sometime in the late 1970s. Since the couple's separation, Linda has worked about 70-80 hours per week at Jake's Bar, earning an annual gross income of about $16,000. At the time of trial, she was receiving $700 per month from Andy in temporary child support and maintenance. She testified that her monthly expenses were about $3,000 per month.

¶11 Andy testified that he worked for the Williston Basin Interstate Pipeline Company as a compressor operator grossing approximately $28,000 per year. He had accumulated a 401k pension plan worth approximately $25,000. Bernadene testified at trial that she had exercised her power of appointment to disinherit Andy and that she desired him to relinquish his duties as trustee. Even though at the time of trial in February 1997 Andy testified that he had not received the $1,000 per month fee for performing his trustee duties in 1997, under the terms of the trust, Andy received the use of a 1994 truck and unlimited gasoline. By sworn affidavit Andy reported his gross income in 1996 was $49,616. He estimated his monthly expenses to be about $1,500 per month.

¶12 Following trial, the District Court entered its findings of fact, conclusions of law, and decree of dissolution. The court found that the couple's home and Jake's Bar represent the bulk of the marital estate and awarded both to Linda. The court awarded Andy his pension fund and various personal property. The District Court found that Linda nets approximately $1,100 per month. The court found that Andy's net income was $3,600 per month including $1,000 per month for trustee fees. The court determined that Andy had "sufficient income to meet his needs and provide for the needs of his Wife" and awarded Linda $1,000 per month maintenance for four

years.

¶13 On March 5, 1997, Andy filed a motion to alter or amend judgment, arguing that the court erred in finding that his net income was $3,600 per month. He also argued that because he would likely be forced out of his position as co-trustee, the court should not consider the $1,000 per month trustee fee. Linda opposed the motion, stating that the evidence at trial supported the judgment. Andy then filed a reply, stating that he had resigned from the trust, attaching a document entitled "Resignation As Trustee." Linda filed a motion to strike, arguing that the court could not consider new evidence in considering a motion to alter or amend under Rules 59(g) and 60(b), M.R.Civ.P.

¶14 The District Court granted Linda's motion to strike and proceeded to rule on Andy's motion without considering the "Resignation As Trustee" document. The court denied Andy's motion and upheld its earlier findings and conclusions noting that because Andy had failed to provide the court with his most recent tax returns, it could only estimate his income based on the information it had before it.

¶15 Andy appeals from the District Court's findings and conclusions, arguing that the court erred in awarding Linda $1,000 maintenance per month. He also argues that the court erred in imputing to him $1,000 per month trustee income because he has resigned as trustee. Linda cross-appeals, arguing that the District Court erred in not including Andy's interest in the John G. Beadle Revocable Trust as part of the marital estate. In April 1998, during the pendency of this appeal, Bernadene passed away having exercised her power of appointment to exclude Andy from receiving any share of the trust corpus.

## Discussion

¶16 1. Did the District Court err in considering $1,000 per month income earned by Andy as trustee of his parents' trusts?

¶17 Andy argues that the District Court erred in considering the $1,000 per month income he received as trustee because he was no longer receiving the trustee fee and had not throughout the preceding year. We review a district court's findings of fact to determine whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.

¶18 The District Court found that Andy's "annual salary and co-trustee fee from the trusts is $12,000. Even though Husband did not get this fee in January, 1997, the trusts continue to provide him for his personal use with a 1994 4-wheel drive pickup and fuel, oil, maintenance and licensing for the same. . . . [H]e remains co-trustee of his deceased father's trust and should be receiving the fee and salary therefrom."

¶19 Sometime after the District Court entered its findings of fact, Andy resigned his position as trustee, apparently under pressure from his family. However, at trial, Andy testified as follows:

> Q [by counsel for Andy]: Now with regard to the trust income, you have been receiving a thousand dollars a month from the trust as the trustees fee; is that correct?
>
> A [by Andy]: That's correct.
>
> Q: Are you still receiving this money?
>
> A: I haven't received it this year at all, no.
>
> Q: What is your family's attitude towards your continuation as the trustee of the trust?
>
> A: Well I had a discussion last night, and they want me to resign from the trust.

Although he eventually resigned, as of the date of trial, Andy was still acting as a co-trustee of the John G. Beadle Revocable Trust. Therefore, regardless of whether he was actually receiving it, Andy was entitled to $1,000 per month in compensation.

¶20 We hold that the District Court did not abuse its discretion in finding that Andy earned $1,000 per month in income as trustee based on the evidence presented at trial. Further, in considering Andy's motion to alter or amend the judgment under Rules 59(g) and 60(b), M.R.Civ.P., the District Court was not required to consider the "Resignation As Trustee" document that Andy attached to his reply brief. At the time of trial, Andy was serving as co-trustee, and this Court will not consider subsequent events in reviewing the District Court's findings. If, in fact, circumstances

have substantially changed since the time of trial, § 40-4-208, MCA, sets forth the procedure for modifying a maintenance award.

¶21 2. Did the District Court abuse its discretion in awarding Linda maintenance of $1,000 per month?

¶22 Andy also argues that the $1,000 per month maintenance awarded Linda by the District Court was unreasonable and excessive. Andy contends that, in addition to erroneously imputing $1,000 of trust income to him, the District Court also erroneously inflated the income he received through his employment at Williston Basin. We review a district court's award of maintenance to determine whether it is clearly erroneous. In re Marriage of Brandon (1995), 271 Mont. 149, 152, 894 P.2d 951, 952-53.

¶23 Andy contends that nothing in the record supports the District Court's finding that his "annual gross income at [Williston Basin] is approximately $36,000." We disagree. Linda admitted into evidence the child support worksheet, which was completed using figures from Andy's child support affidavit. This worksheet listed Andy's annual gross income, presumably including his annual trustee income of $12,000, as $49,616. Further, Andy's 1994 tax return (the most recent return he had prepared prior to trial) listed Andy's income from wages, salaries, and tips as $36,368 and total income as $48,676.

¶24 Andy asserts that his actual "take home" earnings from working at Williston Basin are approximately $1,950 per month. However, at trial, he presented the District Court with no evidence to support this assertion. The District Court noted in its denial of Andy's motion to alter and amend: "[Andy's] income was determined in an approximate amount in part because he failed to present evidence of current tax returns, detailed accounting and valuation of benefits." We determine that the District Court's finding that Andy's annual income from Williston Basin was $36,000 is not clearly erroneous.

¶25 The District Court found that with his salary from Williston Basin, his health insurance and retirement benefits, the $1,000 per month trustee fee, and the value of the truck, maintenance, fuel and insurance provided him under the terms of the trust, Andy's net monthly income was $3,600. According to his own testimony, Andy's monthly expenses, including $500 in child support, total $1,500. The District

Court found that "[Andy] still has sufficient income to meet his needs and provide for the needs of [Linda]" and awarded her $1,000 per month in maintenance. The record contains substantial evidence to support these findings.

¶26 We hold that the District Court's award of maintenance was not clearly erroneous.

¶27 3. Did the District Court err in excluding Andy's trust interest from the marital estate?

¶28 Initially, the District Court ordered Bernadene to answer discovery aimed at determining the value of the John G. Beadle Revocable Trust. The court held that the trust is a "vested remainder, subject to divesture" and, thus, part of the marital estate. However, after Bernadene presented the District Court with proof that she had executed a codicil to her will exercising her power of appointment to exclude Andy from receiving any trust proceeds, the District Court overruled its prior order compelling discovery of the trust assets and held that because Bernadene had exercised her power of appointment, Andy no longer had any vested remainder interest in the John G. Beadle Revocable Trust. In her reply brief, which was filed after Bernadene's death, Linda argues that the District Court erred in not including Andy's trust interest in the marital estate because, regardless of the status of Bernadene's will prior to her death, Andy's interest was vested.

¶29 Although the District Court was correct in holding that Andy's interest in the trust should not be included in the marital estate, we disagree with the District Court's reasoning. While it is possible to reconcile the holdings of past cases discussing when an interest acquired through a testamentary trust or devise should be considered for the equitable division of the marital estate, no clear general rule has been enunciated. Thus, we attempt to clarify what has heretofore been an unclear area of the law.

¶30 Under § 40-4-202, MCA, in dividing the property of the marriage, the court shall consider "the opportunity of each for future acquisition of capital assets and income." We discussed whether a spouse's interest in a testamentary trust is properly considered in dividing the marital estate in In re Marriage of Meeks (1996), 276 Mont. 237, 915 P.2d 831. In Marriage of Meeks, 276 Mont. at 242, 915 P.2d at 834, Linda Meeks moved to dissolve her marriage from Alan Meeks. In his will,

Alan's father had established a testamentary trust for the benefit of his wife, Alan's mother, and named Alan and his brother as co-trustees. Marriage of Meeks, 276 Mont. at 243, 915 P.2d at 835. According to the terms of the will, the trust was to terminate upon his wife's death and be distributed equally between Alan, his brother, and his sister. Marriage of Meeks, 276 Mont. at 243, 915 P.2d at 835. The will also contained a spendthrift provision which provided that no title in the trust or income therefrom would vest prior to actual distribution. Marriage of Meeks, 276 Mont. at 243, 915 P.2d at 835. Prior to the dissolution proceedings, his father passed away.

¶31 Alan moved the district court to exclude his interest in the testamentary trust, and the court granted the motion. Marriage of Meeks, 276 Mont. at 243, 915 P.2d at 835. On appeal, Linda argued that Alan's interest in the trust was a vested remainder and should therefore have been considered part of the marital estate. Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 835. This Court noted that a vested remainder is " 'one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend on the happening of any future event, but whose enjoyment and possession is postponed. . . . [A] vested remainder is not rendered contingent by the fact that it may never vest in possession.' " Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 835-36 (quoting 23 Thompson on Real Property, 325-26).

¶32 We held that because the interest was not dependent upon the occurrence of some future event, it was a vested remainder. Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 836. In other words, Alan was sure to inherit so long as he did not predecease his mother or she did not deplete the trust corpus. Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 836. Therefore, we labeled Alan's interest in the testamentary trust a vested remainder subject to divestment. Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 836.

¶33 However, having labeled Alan's interest a vested remainder, we noted that "[s]uch classifications, however, are not necessarily controlling regarding how a remainder interest should be treated. When such interests are created by a will, the testator's intent also must be considered." Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 836. We stated that "[t]he testator's intent, if clearly articulated, can preserve as contingent a remainder which otherwise would be deemed to have vested." Marriage of Meeks, 276 Mont. at 245, 915 P.2d at 836. We then held that the spendthrift provision in Alan's father's will clearly expressed his intent that Alan's

interest in the trust would remain contingent until distribution. Marriage of Meeks, 276 Mont. at 245-46, 915 P.2d at 836. We concluded that, therefore, the district court did not err in holding that this interest was not part of the marital estate. Marriage of Meeks, 276 Mont. at 246, 915 P.2d at 836.

¶34 In contrast, in In re Marriage of Hill (1982), 197 Mont. 451, 643 P.2d 582, this Court included Robert Hill's remainder interest in land in the marital estate. Robert's father, in his will, devised to Robert a remainder interest in land with a life estate to his wife, Robert's mother. Marriage of Hill, 197 Mont. at 457, 643 P.2d at 586. The district court held that Robert's interest was a vested interest subject to divestment and therefore not to be included in the marital estate. Marriage of Hill, 197 Mont. at 458, 643 P.2d at 586. This Court reversed, holding that the mere fact that Robert could predecease his mother, the life tenant, did not convert his vested interest into one subject to divestment. Marriage of Hill, 197 Mont. at 458, 643 P.2d at 586. We held "[a]t the time of the marriage dissolution . . . [Robert] had a remainder interest with a present value, a property interest which will ripen into a full one-fourth interest in all of the land upon the death of his mother." Marriage of Hill, 197 Mont. at 458, 643 P.2d at 586. We concluded that because Robert's interest "could be sold or otherwise alienated, transferred or mortgaged, the property had a present value and should be included." Marriage of Hill, 197 Mont. at 459, 643 P.2d at 587.

¶35 In Buxbaum v. Buxbaum (1984), 214 Mont. 1, 692 P.2d 411, this Court considered a vested trust interest and concluded it was properly included in the marital estate. Adam and Bonita Buxbaum's marriage was dissolved, and their marital assets distributed. Buxbaum, 214 Mont. at 3, 692 P.2d at 412. Prior to his death, Adam's father had transferred shares of stock to a testamentary trust for his wife's benefit. Buxbaum, 214 Mont. at 4, 692 P.2d at 412. At her death, a majority of the trust principal was to go to Adam. Buxbaum, 214 Mont. at 4, 692 P.2d at 412. Both Adam and Bonita characterized Adam's interest in the trust as a vested future interest subject to defeasance, but Bonita argued that it should be included in the marital estate. Buxbaum, 214 Mont. at 6, 692 P.2d at 413. The district court included the present value of Adam's remainder interest in the trust in the marital estate. Buxbaum, 214 Mont. at 7, 692 P.2d at 413. This Court affirmed, holding that even though Adam's interest was subject to divestment--he could predecease his mother--the district court did not abuse its discretion by considering this interest in the marital estate.

¶36 In Marriage of Hill, Buxbaum, and Marriage of Meeks, the interest considered was a vested interest; that is, (1) the interest was limited to an ascertained person in being; and (2) that person's right to the estate was fixed and certain and did not depend on the happening of any future event. In Marriage of Hill and Buxbaum, the only event that could divest the spouse of his interest was if he predeceased the owner of the life interest. Likewise, in Marriage of Meeks, the spouse was sure to receive his interest in the trust corpus so long as he did not predecease his mother. However, this Court held that the spendthrift provision evidenced the intention of the settlor of the trust that the spouse's interest not vest until the trust proceeds were distributed. These cases all stand for the general proposition that only a vested remainder may be considered in evaluating the opportunity for future acquisition of assets or income under § 40-4-202, MCA, and that even where the interest is vested, the intent of the testator can render it contingent.

¶37 In this case, however, Andy's interest in the John G. Beadle Revocable Trust was not a vested interest. Bernadene had a life interest in the John G. Beadle Revocable Trust and the power to appoint by will the remainder of the trust among the couple's descendants. Only in the event that Bernadene did not choose to exercise her power of appointment would the trust corpus be distributed among John and Bernadene's children, including Andy. We noted in Marriage of Meeks, 276 Mont. at 244, 915 P.2d at 835-36, "[g]enerally, a remainder will be considered contingent if the recipient is unknown or if the interest will only vest upon the occurrence of an event which is not certain to happen." Until Bernadene passed away, it was not known how the John G. Beadle Revocable Trust would be distributed, and the recipients of the interest were not known.

¶38 The District Court initially characterized Andy's interest as a vested interest, subject to divesture. However, prior to trial, Bernadene executed a codicil to her will, exercising her power of appointment to disinherit Andy. The District Court held that "by reason of the divesture taking place, Andy no longer has any vested remainder interest in the John G. Beadle Revocable Trust. Unless the remainder interest is vested, it cannot be included in the marital estate." We determine that the District Court was correct in holding that a remainder interest can only be considered if it is vested, but that it incorrectly based its classification of Andy's interest on the status of Bernadene's will. The provisions of Bernadene's will only became significant at her death, when the power of appointment was exercised. Andy's interest remained contingent through trial and up until Bernadene's death in April 1998.

¶39 The parties also cite Goodmundson v. Goodmundson (1982), 201 Mont. 535, 655 P.2d 509, and Johnston v. Johnston (1991), 249 Mont. 298, 815 P.2d 1145. Unlike the cases discussed to this point, which involve a spouse whose parent has died and left him a future interest (vested or contingent), Johnston and Goodmundson involve the issue of whether the district court may include a spouse's possible inheritance in the marital estate, prior to the death of the devisor. We conclude it cannot.

¶40 In Johnston, 249 Mont. at 303, 815 P.2d at 1148, John Johnston argued that the district court erred in not including his wife Mary's expected future inheritance from her father in their marital estate. At trial, Mary's father testified that he had given Mary gifts inter vivos to provide for her comfort and to effectuate his estate plan. Johnston, 249 Mont. at 303, 815 P.2d at 1148. He then testified that Mary could expect a "pittance" of inheritance upon his death and that he intended to leave the bulk of his estate to charity. Johnston, 249 Mont. at 304, 815 P.2d at 1148. This Court held: "Basing Mary's future acquisition on an inheritance to be received upon the death of her father is highly speculative and thus, inappropriate. We therefore hold that the District Court did not err regarding consideration of Mary's expected inheritance." Johnston, 249 Mont. at 304, 815 P.2d at 1148.

¶41 The holding in Johnston, 249 Mont. at 304, 815 P.2d at 1148, lends support to our analysis here. A will is a revocable instrument which does not take effect until the death of its maker. McReynolds v. McReynolds (1966), 147 Mont. 476, 414 P.2d 531. Thus, like Andy, Mary Johnston could not know whether she would have an interest in her father's estate until his death. Johnston, 249 Mont. at 304, 815 P.2d at 1148. Therefore, this Court concluded that her possible inheritance should not be included in the marital estate. Johnston, 249 Mont. at 304, 815 P.2d at 1148.

¶42 However, in Goodmundson, the district court considered the husband's "sizeable" expected inheritance in distributing the marital property. This Court affirmed, holding: "Under section 40-4-202, MCA, the District Court must consider future acquisition of assets. The husband's expectation of a sizeable inheritance is therefore a valid consideration in the equitable distribution of the marital property." Goodmundson, 201 Mont. at 540, 655 P.2d at 512. Again, a will may be modified or revoked at any time prior to the testator's death and passes no interest until that time. McReynolds, 147 Mont. at 480, 414 P.2d at 533. The Goodmundson Court did not mention the type or value of interests involved or the extent to which the district court relied on the inclusion of the husband's expected inheritance. However, to the

extent <u>Goodmundson</u>, 201 Mont. at 540, 655 P.2d at 512, holds that the value of an expected inheritance may be included in the marital estate, it is overruled.

¶43 We determine that Andy's interest in the John G. Beadle Revocable Trust was contingent and could not be ascertained until Bernadene's death. Therefore, the District Court did not err in excluding Andy's interest in the trust from the marital estate. We determine that our prior holdings in <u>Marriage of Meeks</u>, 276 Mont. at 245-46, 915 P.2d at 836; <u>Buxbaum</u>, 214 Mont. at 6-7, 692 P.2d at 413-14; and <u>Marriage of Hill</u>, 197 Mont. at 458-59, 643 P.2d at 586-87, stand for the proposition that only a vested interest may be considered in dividing in the marital estate and, even then, the testator's intent may convert the vested interest to a contingent one. Lastly, we hold that a spouse's possible inheritance is never properly included in the marital estate nor considered in dividing the marital estate and overrule <u>Goodmundson</u>, 201 Mont. at 540, 655 P.2d at 512.

¶44 Based on the foregoing, we affirm the decision of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler specially concurring.

¶45 I concur with the result of the majority opinion. I do not agree with all that is said therein.

¶46 Although I understand that the majority's purpose during its discussion of Issue 3 is to simply distinguish between vested remainders and contingent remainders for the purpose of evaluating the certainty with which a future interest will be realized, I am concerned that language in the majority opinion infers that gifted or devised property which is vested is automatically included in the marital estate. Whether or not gifted, devised, or preacquired property is included in a marital estate for

purposes of distribution and, if so, the extent to which such property is included, depends on factors other than whether or not the recipient's interest is vested. For example, we have previously held that pursuant to § 40-4-202, MCA, preacquired, gifted, or devised property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation. We have further held that only in the event the nonacquiring spouse did contribute, is the nonacquiring spouse entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts. *See Smith*, 270 Mont. 263, 891 P.2d 522; *In re Marriage of Bradshaw* (1995), 270 Mont. 222, 891 P.2d 506; *In re Marriage of Smith* (1994), 264 Mont. 306, 871 P.2d 884; *In re Marriage of Rock* (1993), 257 Mont. 476, 850 P.2d 296; *In re Marriage of Keedy* (1991), 249 Mont. 47, 813 P.2d 442; *In re Marriage of Gallagher* (1991), 248 Mont. 100, 809 P.2d 579; *In re Marriage of Luisi* (1988), 232 Mont. 243, 756 P.2d 456; *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 745 P.2d 353; *In re Marriage of Herron* (1980), 186 Mont. 396, 608 P.2d 97.

¶47 For these reasons, although I concur with the majority's conclusion affirming the District Court's exclusion of Andy's interest in his father's testamentary trust from the marital estate, I do not agree with all of the language in the majority opinion.

/S/ TERRY N. TRIEWEILER