No. 86-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

IN RE THE MARRIAGE OF
JERRY C. TONNE,

Petitioner and Appellant,

and

SUSAN K. TONNE,

Respondent and Respondent.


APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Baiz & Olson; Kenneth R. Olson, Great Falls, Montana

For Respondent:

Howard Strause, Great Falls, Montana


Submitted on Briefs: Oct. 2, 1986

Decided: March 4, 1987

Filed: MAR 4 - 1987

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jerry C. Tonne appeals the property, visitation and child support provisions of a January 10, 1986, decree of the Eighth Judicial District Court, Cascade County.

Jerry raises three issues for our review:

1. Did the District Court abuse its discretion in dividing the marital property equally?

2. Did the District Court abuse its discretion in ordering the sale of the family ranch to satisfy the division of marital property?

3. Did the District Court abuse its discretion in setting the terms of child support and visitation?

We affirm on Issues 1 and 3. We remand on Issue 2.

Jerry Tonne and Susan Tonne were married in Great Falls on December 21, 1974. Two children were born of the marriage. At the time of the marriage, Susan and Jerry each had a Bachelor's degree in education. From 1974 until 1976, Susan taught school full-time in Geraldine, Montana. Jerry worked on his family ranch, which he and his brother had purchased from their mother in 1972.

From 1976 until 1980, Susan continued to teach part-time, and also helped Jerry with the ranch work. In 1982, Jerry and his brother sold the Geraldine ranch. Jerry received $350,000 for his half-interest. He used the money to purchase a smaller ranch near Fort Shaw for $235,000.

In 1984, Jerry filed for divorce. He continues to work the Fort Shaw ranch, although he has moved out of the ranch home. Susan now works as a bookkeeper and continues to live in the ranch home with the children.

## Issue 1

Did the trial court abuse its discretion in dividing the marital property equally?

In its findings, the District Court concluded "that Jerry and Susan contributed equally to the accumulation of the marital estate." Under the personal property division, Jerry received $55,200, and Susan received $27,032 with another $28,767 payable upon sale of the ranch. The net balance from the sale of the ranch would then be divided equally between Susan and Jerry.

Our standard of review for the division of marital property was outlined in In Re Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 626, where we held:

> In dividing property in a marriage dissolution the district court has far-reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.

Jerry contends that he brought a much larger net worth into the marriage and is therefore entitled to more than half of the marital estate upon dissolution.

In examining the facts we note that Susan brought $4,000 worth of personal property into the marriage, and no real property. Early in the marriage, Susan also withdrew $4,500 from her teacher's retirement account to buy a family car.

Jerry Tonne's estate, at the time of the marriage in 1974, consisted exclusively of his interest in the ranch. Jerry and Wayne Tonne bought the ranch under a contract for deed from their mother for $60,000, although the fair market

3

value of the ranch was approximately $150,000. A second contract for deed conveyed the farm machinery and livestock to Jerry and Wayne for $23,900. By the date of Jerry's marriage, the brothers had paid $12,600 on the real property and $11,600 on the personal property.

Both Susan and Jerry commissioned appraisers in 1985 to estimate the value of the Geraldine ranch in 1974. Jerry's appraiser fixed the ranch's value at $354,700. After subtracting the outstanding debts from this figure, the appraiser estimated Jerry's net worth at $180,000. Susan's appraiser fixed the ranch's value at $235,000, with Jerry's net worth at $125,000. The court adopted the valuation of Susan's appraiser.

Although Jerry's net worth greatly exceeded Susan's net work on the date of their marriage, § 40-4-202(1), MCA, states that the court shall:

> . . . finally equitably apportion between the parties the property and assets belonging to either or both . . . In making apportionment, the court shall consider the duration of the marriage . . . the needs of each of the parties; custodial provisions . . . and the contributions of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage . . . the court shall consider those contribution of the other spouse to the marriage, including . . . (b) the extent to which such contributions have facilitated the maintenance of this property . . . [Emphasis added. ]

The Tonne marriage lasted eleven years and produced two children. The findings of the District Court list numerous and specific contributions by Susan, which facilitated the maintenance of the ranch. She contributed her skills as a ranchworker and homemaker, including domestic chores for

4

Wayne while he lived with Jerry and Susan on the Geraldine ranch. Also during the marriage Susan contributed $31,700 in non-ranch income to the household.

We discussed spousal contributions in In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361, where a ranch was owned solely by the husband. Upon dissolution of the marriage, we held that the wife had "acquired a vested interest in the major marital asset, the ranch property, regardless of its source and title. She did so by virtue of her fourteen years as a mother, housewife, and part-time ranch hand." Brown, 179 Mont. at 423, 587 P.2d at 365.

Under the guidelines of Brown, the District Court acted well within its bounds of discretion and fully documented its conclusions. As we held in In Re Marriage of Keepers (Mont. 1984), 691 P.2d 810, 813, 41 St.Rep. 2163, 2167, premarital property is a factor the court shall consider, but the court is not bound to restore the parties to their premarital status. We affirm the court's equal division of the marital estate.

Issue 2

Did the District Court abuse its discretion in ordering the sale of the family ranch to satisfy the division of marital property?

In its findings, the District Court stated:

> Although this court is aware of Jerry Tonne's desire to keep and maintain the Fort Shaw ranch, this court concludes that it would not be possible for Mr. Tonne to retain the Fort Shaw ranch and at the same time support himself, help support his children, and pay to Susan Tonne the reasonable value of her share of the marital estate . . . The real property should be listed for sale forthwith and after sale and the payment

5

> of all liens and encumbrances, including
> real property taxes, real estate commis-
> sions and closing costs, the balance
> remaining should be divided as follows:
> Susan Tonne should receive $28,767.00
> (the difference in the amount of the
> personal property awarded to Jerry
> Tonne) and the balance should be divided
> equally between the parties. [Emphasis
> added.]

In reviewing the forced sale of a family ranch, we note that public policy in Montana favors the preservation of the family ranch, following the division of the marital property. In Re Marriage of Glass (Mont. 1985), 697 P.2d 96, 100, 42 St.Rep. 328, 331. However, this policy must be balanced against the spouse's property rights. "[T]he policy of keeping a family ranch intact cannot be used to deprive a spouse of his or her equitable share of the marital estate." In Re the Marriage of Garst (Mont. 1983), 669 P.2d 1063, 1067, 40 St.Rep. 1526, 1531.

Jerry testified that he bought the Fort Shaw ranch because he wanted to specialize in the registered cattle business. Jerry contends that he can feasibly operate the ranch, plus pay for child support and Susan's equitable share of the marital estate. Jerry asserts that he could pay off Susan's remaining share over time with a low interest rate, where Susan's share is secured by a lien on the land. Jerry argues that a forced sale in the current market amounts to a "fire sale." As a life-long rancher, he requests the chance to pay his debt to Susan, while being allowed to keep his livelihood.

Susan counters that the ranching operation has been marginal throughout their marriage. She contends that Jerry cannot realistically operate the ranch while making child support payments and estate payments. Susan argues that the

ranch must be sold as soon as possible, so that she can recover her share of the marital estate.

In deciding this issue, we note In Re the Marriage of Gomke (1981), 627 P.2d 395, 38 St.Rep. 578, with facts similar to the present case. In Gomke, the farm was held solely in the husband's name. The wife insisted that the farm be sold. She contended that the husband could not generate sufficient income from the farming operation and from his outside employment to pay her annual installments, plus pay his other indebtedness. The net value of the Gomke marital estate was $207,000. We affirmed the District Court when it allowed the husband to pay the wife's $88,000 share in four annual installments of $22,000 each, together with annual interest at 7 percent. The court also gave the wife a lien on the property for the outstanding balance. The farmland was heavily encumbered, and the husband paid $900 per month in child support while earning $650 per month from non-farm employment. In light of this data, the Court stated: "Given the husband's relatively low yearly income, he will quite possibly have to refinance the property or arrange for private loans in order to make the annual payments to the wife." Gomke, 627 P.2d at 397.

Similarly, the Fort Shaw ranch is currently appraised at $176,000 and is held solely in Jerry's name. The Fort Shaw ranch is currently encumbered by a $62,000 mortgage, which Jerry assumed from the previous owners, payable in annual installments of $7,800. Jerry is also obligated for $500 per month in child support. He presented evidence that he earns over $1,000 per month from both ranch and non-ranch work.

We are faced with a delicate issue. On one hand, the District Court acted within its discretion based on the findings, when it ordered the sale of the ranch. On the

7

other hand, the worst economic times in fifty years have crippled the market for ranches. Jerry purchased the Fort Shaw ranch for $235,000. The District Court found that the ranch is now worth only $176,000. Drought and deflation have driven down the value of the land. To force a sale now would deprive both Jerry and Susan of the value that the ranch would possess in a market closer to historical norms.

If the sale is made in a more favorable market, both Jerry and Susan's shares will be increased. Therefore, in equity, we are remanding this issue with the suggestion that the District Court allow Jerry thirty-six months to sell the ranch. If the ranch remains unsold after thirty-six months, the District Court might then order a forced sale. To protect Susan's security interest in the ranch, Susan's personal property share of $28,767 could constitute a judgment lien on the ranch, earning 10 percent annual interest until fully paid. Upon sale of the ranch, Susan could receive half of any net proceeds after her personal property share has been deducted.

In the alternative and within the District Court's discretion, the parties might elect to liquidate Susan's share of the marital estate through a structured buyout similar to the one in Gomke. If Jerry fails to make timely payments, his option to retain the ranch would terminate, and the property would be sold as the District Court orders. If Jerry would choose to sell the ranch before Susan is fully paid, she would receive her balance due from the net proceeds. This equitable buyout would allow Susan to retain a security interest in the land, while allowing Jerry an opportunity to sell the ranch in a better market or to retain the ranch.

Therefore, we remand this issue and suggest that the District Court, in its discretion, modify its decree to

8

provide Jerry with thirty-six months to sell the ranch. Alternatively, the District Court might also modify the decree, with the agreement of Jerry and Susan, to allow a Gomke-type buyout.

Issue 3

Did the District Court abuse its discretion in setting the terms of child support and visitation?

The District Court ordered Jerry to pay support of $250 per child per month. The court also ordered that any unpaid child support would be a lien upon the proceeds of the ranch when it is sold. In setting the amount of child support, the District Court noted that Jerry has personal property valued at over $55,000. The court also considered Jerry's earning capacity and stated in its findings: "Taking into consideration Jerry Tonne's education background, his income potential is greatly in excess of $1,000 per month."

In reviewing child support issues, our standard is that the "award made by the District Court will not be disturbed on appeal unless there has been a clear abuse of discretion resulting in substantial injustice." Grenfell v. Grenfell (1979), 182 Mont. 229, 232, 596 P.2d 205, 207.

Jerry argues that the court failed to consider the financial resources of Susan. We note otherwise. The court specifically found that Susan earns $763 per month in net income, but her living expenses with Brett and Lisa greatly exceed that amount. In addition, Jerry presented evidence to the court that he could earn $750 per month in non-farm income, but his living expenses are substantially less than that amount. Jerry also presented evidence that he could earn several hundred dollars per month in farm income. Therefore, Jerry's own evidence places him in a better financial position than Susan.

We held in In Re the Marriage of Carlson (1984), 693 P.2d 496, 500, 41 St.Rep. 2419, 2423, that the allocation of child support between the parties should be based upon the needs of the children and the parties' respective abilities to pay. Furthermore, § 40-4-204, MCA, states that the court must consider the financial resources of the parents and the needs of the children when ordering child support. We find that the District Court followed the provisions of § 40-4-204, MCA, when it established the child support payments. We find no abuse of discretion on this issue.

On the issue of visitation, the court granted joint custody to both parents, with physical custody to Susan. The court noted that both children expressed discomfort about living with Jerry. It granted Jerry visitation rights on alternate weekends, alternate holidays, an alternate week night, Father's Day and three non-consecutive weeks in the summer. Jerry argues that the court negated the effect of joint custody by severely limiting Jerry's right to visit his children.

Section 40-4-217(1), MCA, states: "A parent not granted custody of the child is entitled to reasonable visitation rights . . ." In light of the findings, the court's visitation schedule is reasonable. Furthermore, the court's visitation schedule accords with In Re Marriage of Alt (Mont. 1985), 708 P.2d 258, 261, 42 St.Rep. 1621, 1625, where we held that visitation on alternate weekends, alternate holidays, one evening per week, and two weeks in the summer was reasonable. Therefore, we find no abuse of discretion in the court's visitation schedule.

In summary, we affirm on Issues 1 and 3.  We remand on Issue 2.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11