No. 95-154

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

LINDA B. MEEKS,

     Petitioner and Appellant,

  and

ALAN R. MEEKS,

     Respondent and Respondent.

FILED

APR 23 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Don A. LaBar, Church, Harris, Johnson & Williams,
Great Falls, Montana

     For Respondent:

          J. Kim Schulke, Linnell, Newhall & Martin, Great
Falls, Montana


Submitted on Briefs:  August 17, 1995

Decided:  April 23, 1996

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Linda B. Meeks (Linda) appeals the order of the Eighth Judicial District Court, Cascade County, which dissolved her marriage to Respondent Alan R. Meeks (Alan) and divided the marital property between the two parties.

Affirmed in part, reversed in part and remanded.

## ISSUES

Linda alleged twenty-five separate errors in the District Court's division of the marital estate. The following restated issues are dispositive of this appeal:

1. Did the District Court err in granting Alan's motion for partial summary judgment, which excluded from the marital estate Alan's interest in a testamentary trust established by his father?

2. Did the District Court err in excluding from the marital estate the value of Alan's accrued vacation and sick leave?

3. Did the District Court err in adopting the farm appraisal offered by Alan's expert?

4. Did the District Court abuse its discretion by refusing to allow the record to remain open for the testimony of a rebuttal witness?

5. Did the District Court err by not including in the marital estate an additional thrift plan contribution made by Alan between September 30, 1994, and November 17, 1994, the date of trial?

6. Did the District Court err in ordering that the parties' legal fees and costs be paid out of the marital estate before division?

2

7. Did the District Court err in allocating the Meeks' farm to Alan, rather than dividing the farm between the parties?

8. Was the District Court's distribution of the marital property in this case clearly erroneous?

## FACTS

Linda and Alan were married in 1968 and have one adult son. For the past 22 years, Alan has worked as a farm appraiser, while Linda has worked as a legal secretary, bookkeeper, tax preparer, and in several banks. Over the course of their 26-year marriage, the parties generated a marital estate worth approximately $1,000,000.

In 1994, Linda filed a petition to dissolve the marriage. Alan moved for partial summary judgment, asking the District Court to exclude from the marital estate his interest in a testamentary trust established by his father. This motion was granted.

After a further hearing in late 1994, the District Court issued its findings of fact, conclusions of law, and order dissolving the marriage and dividing the marital estate. Linda appealed the District Court's grant of summary judgment on the issue of the testamentary trust, as well as its division of the marital estate. Other facts will be provided as necessary.

## STANDARD OF REVIEW

The distribution of marital property in a dissolution action is governed by § 40-4-202, MCA, which provides in part:

> In a proceeding for dissolution of a marriage, legal
> separation, or division of property following a decree of
> dissolution . . . the court [shall], without regard to
> marital misconduct, finally equitably apportion between

3

the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of husband or wife or both. . . .

Section 40-4-202(1), MCA.

A district court's findings of fact regarding the division of marital property will be upheld unless the findings on which the division are based are clearly erroneous. In re Marriage of DeWitt (Mont. 1995), 905 P.2d 1084, 1087, 52 St.Rep. 1089, 1091. If a district court's judgment is supported by substantial credible evidence, it will not be disturbed absent an abuse of discretion. In re Marriage of Griffith (Mont. 1996), ___ P.2d ___, ___, 53 St.Rep. 28, 30 (citing In re Marriage of Maedje (1994), 263 Mont. 262, 868 P.2d 580).

The test for abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." In re Marriage of Tonne (1987), 226 Mont. 1, 3, 733 P.2d 1280, 1282 (quoting In re Marriage of Rolfe (1985), 216 Mont. 39, 45, 699 P.2d 79, 83). Moreover,

> A District Court has broad discretion in determining the value of property in a dissolution. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. The court is free to adopt any reasonable valuation of marital property which is supported by the record. As long as the valuation of property in a dissolution is reasonable in light of the evidence submitted, we will not disturb the finding on appeal.

In re Marriage of Robinson (1994), 269 Mont. 293, 296, 888 P.2d 895, 897 (citations omitted).

4

While the above is the general standard of review in marital estate division cases, other standards of review will be set out as is necessary to address the issues raised.

## DISCUSSION

1. Did the District Court err in granting Alan's motion for partial summary judgment, which excluded from the marital estate Alan's interest in a testamentary trust established by his father?

Alan's father William A. Meeks, Sr. died in 1986, leaving a will which established a testamentary trust for the benefit of his wife (Alan's mother), and which named Alan and his brother as co-trustees. According to the terms of the will, the trustees have the power to invade the corpus only "if there are no other sources of funds reasonably available" for the maintenance of Alan's mother, and then only to the extent necessary "for her care, maintenance and support." Upon the death of Alan's mother, the trust will terminate and will be distributed in equal shares to Alan, his brother, and his sister.

The will also contains a spendthrift clause regarding the trust, which provides:

> No title in the trust or trusts created in and by this will, or in the income therefrom, shall vest in any beneficiary, and neither the principal nor the income of any such trust estate shall be liable for the debts of any beneficiary, and no beneficiary shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in any such trust estate created by the terms of this will or the income produced thereby by the Co-Trustees to said beneficiary.

Based on the foregoing language, Alan moved for partial summary judgment, claiming that he has only a contingent remainder in the trust, and his interest therefore should not be considered part of

5

the marital estate. The District Court agreed and granted the motion, excluding Alan's remainder interest in the trust from the marital estate.

Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to summary judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Vincelette v. Metropolitan Life Ins. Co. (Mont. 1995), 903 P.2d 1374, 52 St.Rep. 1035. In reviewing a grant of summary judgment, this Court's standard of review is identical to that of the trial court and, in determining whether summary judgment was appropriate, we will use the same criteria employed by the trial court. Vincelette, 903 P.2d at 1376 (citations omitted).

Linda contends the grant of partial summary judgment in this case was in error. While she does not argue that a genuine issue of material fact exists, she contends the District Court erred as a matter of law in concluding that Alan's remainder in the trust is contingent. Linda maintains that Alan has a vested remainder in the testamentary trust which should be considered part of the marital estate and divided accordingly.

A contingent remainder is a right to property which may or may not vest in possession at some future date. Generally, a remainder will be considered contingent if the recipient is unknown or if the interest will only vest upon the occurrence of an event which is not certain to happen. A remainder will not be considered contingent if it can fairly be construed to be vested. 23 Thompson

on Real Property, Thomas Edition (David A. Thomas, ed., 1994), 314 (citations omitted).

> [A] vested remainder is one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend on the happening of any future event, but whose enjoyment and possession is postponed to some future time. . . . [A] vested remainder is not rendered contingent by the fact that it may never vest in possession.

23 Thompson on Real Property, 325-26 (citations omitted).

Alan is an ascertainable person in being whose right to a share of the remainder of the testamentary trust is not dependent upon the occurrence of some future event. Rather, he is sure to inherit so long as two given events do not occur. Alan will lose his remainder interest if he dies before his mother, or if the entire trust corpus is used for his mother's maintenance and care before her death. Only these events will serve to divest him of his remainder interest.

It therefore follows that, absent additional conditions, Alan's interest in the testamentary trust would be classified as a vested remainder, subject to divestment. Such classifications, however, are not necessarily controlling regarding how a remainder interest should be treated. When such interests are created by a will, the testator's intent also must be considered.

When construing a will, the cardinal rule is that the intent of the testator must be effected if it is not contrary to the law or to public policy. Matter of Estate of Bennett (Colo.App. 1989), 789 P.2d 446. See also Allen v. Shea (Idaho 1983), 665 P.2d 1041; In re Estate of Larsen (Utah 1982), 649 P.2d 31; In re Question

7

Submitted by U.S. Ct. of App., Tenth Cir. (Colo. 1976), 553 P.2d 382; McGinley v. McGinley (Pa.Super. 1989), 565 A.2d 1220. The testator's intent, if clearly articulated, can preserve as contingent a remainder which otherwise would be deemed to have vested. McGinley, 565 A.2d at 1225.

> [W]hether a remainder is vested or contingent depends entirely upon the testator's intention, and where the testator has indicated with reasonable certainty the intention that it shall not vest until a particular time, it will not vest until that time arrives, and then only in those who are in esse and capable of taking at that time.

23 Thompson on Real Property, 341 (citations omitted).

Appellant cites several cases in support of her position that an interest in a testamentary trust is vested and should be included in the marital estate. In re Marriage of Kis (1982), 196 Mont. 296, 639 P.2d 1151; In re Marriage of Buxbaum (1984), 214 Mont. 1, 692 P.2d 411; In re Marriage of Hill (1982), 197 Mont. 451, 643 P.2d 582; Rolfe, 699 P.2d 79. These cases are easily distinguished, however.

Rolfe and Kis address the valuation of a party's interest in a pension fund, not a testamentary devise. Accordingly, there is no "testator" in these cases whose intent might contravene the general classifications. While Hill and Buxbaum deal with testamentary devises, in neither case was the intent of the testator inconsistent with a finding that the interest in question was vested and properly included in the marital estate.

In the case at bar, Alan's father by his will declared that "[n]o title in the trust . . . or in the income therefrom shall

8

vest . . . prior to actual distribution." In so doing, he unequivocally expressed his intent that his children's interests in the trust remain contingent until such time as the corpus of the trust is in fact distributed. In Montana,

> a decree of distribution is conclusive upon the rights of devisees under a will, subject only to be reversed, set aside or modified on appeal. A decree of distribution has the same force and effect as does a final judgment.

Hill, 643 P.2d at 586.

Since Alan's father's will provided that Alan's interest in the testamentary trust remain contingent until actual distribution, the District Court did not err in refusing to classify the interest in a manner contrary to the testator's express intent. Alan has a contingent remainder in his family testamentary trust, which was properly excluded from the marital estate. Therefore, the District Court did not err in granting Alan's motion for partial summary judgment.

2. Did the District Court err in excluding from the marital estate the value of Alan's accrued vacation and sick leave?

In the 22 years Alan has worked at his present job, he has accrued over 1,900 hours of sick leave and vacation. Upon his retirement, these hours will be added to his term of service for purposes of calculating his pension. Alan may use the leave as necessary before retirement, but it cannot be cashed out at any time. Its only value after retirement is to extend his term of service and consequently increase his pension.

The District Court provided that Alan's pension would be divided according to the "time rule formula," which is set out in

9

In re Marriage of Rolfe (1988), 234 Mont. 294, 298, 766 P.2d 223, 226. See also In re Marriage of Truax (1995), 271 Mont. 122, 894 P.2d 936. The time rule formula provides for the division of a pension as follows:

$$\frac{\text{Years of service during marriage}}{\text{Total years of service}} \times \begin{array}{c}\text{monthly} \\ \text{benefit} \\ \text{(after taxes)}\end{array} \times \tfrac{1}{2}$$

Linda alleges that the time rule formula in this case "should be amended to include not only the number of months [actually] worked by Alan but also the number of accrued hours of sick leave." Because, as we have noted above, any unused sick leave will be added to Alan's total months of service upon retirement, that amount will be taken into account in computing the pension in which Linda will share.

Any sick leave or vacation time which remains unused at Alan's retirement is to be added to his total term of service when his pension is computed. Moreover, any sick leave or vacation which Alan uses between the time of the divorce and his retirement should be debited against vacation or sick leave earned after the divorce. This will prevent unnecessary "drawing down" of the vacation and sick leave which was earned during the marriage and in which Linda has a legitimate, if contingent, interest.

However, adding the vacation and sick leave only to the denominator of the equation would serve to lessen Linda's proportionate share by reducing the fraction. For this reason, the sick leave and vacation which accrued during the marriage should also be added to the numerator of the fraction so that the fraction

10

remains proportionately the same. Accordingly, the fraction in this case should consist of the years worked during the marriage plus the vacation and sick leave accrued during the marriage as the numerator, and the total years worked plus the total vacation and sick leave accrued as the denominator.

The District Court, in specifying that Alan's leave is to be used in computing his pension, considered it to be part of the marital estate, not "the same as" a pension but rather as part of the pension. Linda fails to raise any cogent argument that the inclusion of the leave in the pension itself is erroneous; instead, she alleges only that the manner of inclusion is unclear, and we have rectified that problem. We therefore do not address the issue of whether vacation and sick leave may, under certain circumstances, be considered a distinct marital asset. That question is beyond the scope of this appeal.

Since Linda will receive her proportionate share of the benefit of Alan's leave, and since Alan cannot convert his sick leave or vacation to cash at any time, we find no abuse of discretion in the District Court's refusal to classify Alan's sick leave and vacation as a separate marital asset.

3. Did the District Court err in adopting the farm appraisal of Alan's expert?

In order to assist the District Court in the valuation of the Meeks' farm, Alan presented testimony from an appraiser, John E. Wicks. Linda too called upon an appraiser, Dave Anderson, who also testified to the value of the farm. The District Court rejected

Anderson's appraisal but adopted Wicks', using Wicks' valuation when allocating the farm.

Linda alleges several errors in Wicks' appraisal, including his evaluation of bushel capacity, his valuation of a land option, and his valuation of the farm itself. She also alleges that the District Court ignored assumptions underlying Wicks' appraisal while adopting contrary assumptions underlying Anderson's appraisal "out of context." In light of these alleged errors, Linda asserts that the District Court erred in accepting and using Wicks' appraisal in its findings of fact.

This Court will not substitute its judgment for that of the trial court regarding the credibility of witnesses or the weight to be given to their testimony. In re the Seizure of $23,691 in U.S. Currency (Mont. 1995), 905 P.2d 148, 155, 52 St.Rep. 1063, 1065 (citing Matter of B.T.B. (1992), 254 Mont. 449, 840 P.2d 558). Moreover,

> the determination of property valuation is a factual issue which is within the province of the trial court to decide. When reviewing findings of fact, this Court is precluded from substituting its judgment for that of the trier of fact, and cannot set aside the findings of a court sitting without a jury unless the findings are 'clearly erroneous.' Rule 52(a), M.R.Civ.P.

Trustees of Washington-Idaho-Montana Carpenters-Employers Retirement Trust Fund v. Galleria Partnership (1991), 250 Mont. 175, 184, 819 P.2d 158, 163.

Linda quarrels with the methodology employed by Wicks in his evaluation as well as with the conclusions he reached regarding the value of the farm. But the District Court set out specific reasons

12

why Wicks' appraisal was adopted and Anderson's rejected, including Wicks' expertise and thoroughness. Every argument Linda raises and every flaw she alleges was also heard by the District Court, which nevertheless found Wicks' testimony to be more persuasive than Anderson's. Linda makes no new argument on appeal which might persuade this Court that the District Court's adoption of the appraisal was erroneous. Because Linda has failed to show that the District Court's adoption of Wicks' appraisal was clearly erroneous, the findings of fact which are based upon the Wicks' appraisal are affirmed.

4. Did the District Court abuse its discretion by refusing to allow the record to remain open for the testimony of a rebuttal witness?

In arguing for a higher valuation for the farm, Linda sought to compare the appraisals given by Anderson and Wicks to the price paid by a neighbor who had purchased a "comparable" farm. Wicks testified, however, that the neighbor's farm was not comparable because it included a pond and land for grazing as well as cropland--advantages the Meeks' farm did not have. Therefore, Wicks asserted, this farm naturally would have a higher value and could not be compared to the Meeks' farm.

To rebut Wicks' testimony, Linda sought to present testimony from the owner of the neighboring farm. Linda claimed the owner would have testified that he bought his farm without consideration of the pond or the grazing land, and that, in his opinion, the farm still retained its higher value even if those assets were factored out. This owner, however, was not present in court and had not

13

been served with a subpoena to appear; Linda therefore moved the District Court to hold the record open until the neighbor could testify.

The District Court denied her motion, finding that the witness could have been subpoenaed earlier if Linda wanted to assure his presence. Linda, however, claimed that she had not secured the neighbor's appearance because she had not anticipated Wicks' testimony and was "surprised" by his declaration that the two farms were not comparable. Therefore, Linda asserted that she should have been afforded the opportunity to hold the record open until the neighbor could testify.

The standard of review of evidentiary rulings is whether the district court abused its discretion. A district court has broad discretion to determine if evidence will be admitted and, absent an abuse of discretion, this Court will not overturn a district court's determination. Seizure of $23,691 in U.S. Currency, 905 P.2d at 153.

Even if Linda was in fact surprised by Wicks' refusal to compare the Meeks' farm to the neighbor's farm, we fail to see the probative value of the neighbor's testimony. Wicks was hired to do a professional appraisal of the Meeks' farm; in so doing, he looked at several comparable sales. The neighbor, on the other hand, is a farmer who even Linda admits could only have testified to his own willingness to pay a high price for his own farm, even if, hypothetically, it did not have some of the advantages which it does in fact have.

14

This opinion testimony, even if allowable, could not prove that Wicks was incorrect in his declaration that the farms are not comparable for appraisal purposes. The testimony of an expert, whose opinion is based on fact, could not be adequately rebutted by the testimony of a layman whose opinion is based on a hypothetical scenario which does not exist. The District Court did not abuse its discretion by refusing to allow the record to remain open for the addition of testimony which could not substantively assist it in its fact-finding task.

5. Did the District Court err by not including in the marital estate an additional thrift plan contribution made by Alan between September 30, 1994, and November 17, 1994, the date of trial?

In valuing Alan's thrift plan, the District Court used the valuation provided in the plan's last quarterly statement, dated September 30, 1994. Linda alleges that the District Court should have valued the thrift plan as of the time of trial, six weeks later, and that its failure to do so was reversible error.

Generally, marital assets should be valued at or near the time of the dissolution hearing, unless the district court, at its discretion, decides a different date is necessary to achieve an equitable result. In re Marriage of Lopez (1992), 255 Mont. 238, 244, 841 P.2d 1122, 1125. Apparently, Linda wants this Court to declare that, in this case, six weeks previously is not "near" enough. We decline to do so. The District Court used the most recent quarterly report available in valuing this asset, giving it a value commensurate with the latest documented evidence. Linda's allegation of error is without merit.

15

6. Did the District Court err in ordering that the parties' legal fees and costs be paid out of the marital estate before division?

The District Court found the amount of attorney fees and costs incurred by the parties to be "roughly equal." It therefore ordered that the fees and costs of the divorce should be paid out of the marital estate before is was divided. Linda alleged that such an arrangement constituted an abuse of the District Court's discretion because it did not comply with the applicable statute governing the awarding of attorney fees.

Section 40-4-110, MCA, provides in part:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost of the other party in maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

"An award of attorney fees under this statute must be based on necessity, must be reasonable, and must be based on competent evidence." In re Marriage of Barnard (1994), 264 Mont. 103, 109, 870 P.2d 91, 95 (quoting In re Marriage of Zander (1993), 262 Mont. 215, 227, 864 P.2d 1225, 1233).

Alan argues that the District Court's order that the attorney fees and costs be paid from the marital estate before division means that such fees were not "awarded" to one party over another, but, rather, that the fees are merely a marital "liability" which is properly charged to the estate. He notes that such an arrangement has been approved by this Court in In re Marriage of Cole (1986), 224 Mont. 207, 729 P.2d 1276.

16

In Cole, however, we recognized that an arrangement where all fees are lumped together and the debt then equally divided is to the benefit of the party with the most expenses, and translates into the other party being charged with a disproportionate share of the fees. Such an arrangement amounts to one party paying part of the other party's costs. Therefore, the statutory requirements of § 40-4-110, MCA, must be met by the District Court. We specifically noted in Cole that the District Court had found "that Wife was without means to pay her attorney's fees," which is precisely the type of finding of financial need that is a prerequisite for an award of attorney fees under § 40-4-110, MCA. Cole, 729 P.2d at 1276.

Alan incurred fees of over $11,000 and Linda incurred fees of less than $8,000. If these amounts were consolidated and then divided, each party would be required to pay approximately $9,500. Linda would therefore have to pay all her own fees as well as $1,500 of Alan's fees. This obviously translates into an award of fees to Alan.

The District Court did not find that Alan was without means to pay the entirety of his own fees, and we note again, in passing, that the parties are dividing an estate valued at roughly a million dollars. Since such a finding is a statutorily mandated prerequisite for the awarding of fees and costs, the District Court abused its discretion in allowing Alan to recover any part of his fees from Linda's share of the marital estate. On this issue, we

17

reverse the District Court and remand for entry of judgment on attorney fees in accordance with this opinion.

7. Did the District Court err in allocating the Meeks' farm to Alan, rather than dividing the farm between the parties?

Linda alleges that the District Court erred in allocating the entire farm to Alan, rather than dividing it and giving each party half. Specifically, she contends that the District Court's finding that "[i]t [was] not economically prudent to split the farm" is erroneous.

As noted above, the District Court's findings of fact will not be set aside unless clearly erroneous. DeWitt, 905 P.2d at 1087. Moreover, this Court has repeatedly recognized the long-standing public policy in Montana of keeping farms intact, if possible. Tonne, 733 P.2d 1280; In re Marriage of Glass (1985), 215 Mont. 248, 697 P.2d 96.

Alan expressed a desire to farm full-time after he retires from his job and, someday, to leave the farm to his son. Linda does not require the farm for her continued financial security, nor does the District Court's refusal to partition this asset prevent her from receiving an equitable portion of the marital estate. The District Court did not abuse its discretion in refusing to divide the farm.

8. Was the District Court's division of the marital property in this case clearly erroneous?

Linda alleges numerous other errors in the District Court's division of the marital estate. She disputes the allocation of innumerable items of personal property, from art to farm and lawn

18

equipment, from a $25 "shop vac" to $500 worth of canned, dried, and frozen food. We find nothing in the record that indicates that the District Court abused its discretion. "District courts working in equity, must seek a fair distribution of marital property using reasonable judgment and relying on common sense." In re Marriage of Kimm (1993), 260 Mont. 479, 483, 861 P.2d 165, 168 (citing In re Marriage of Danelson (1992), 253 Mont. 310, 833 P.2d 215). While Linda may not agree with how the District Court allotted the marital estate, she has not shown that the allocation was erroneous.

As noted above, the District Court's provision for the payment of attorney fees did not comply with § 40-4-110, MCA, the statute which controls such awards. Accordingly, that portion of the order is reversed. In all other respects, the order of the District Court is affirmed.

Affirmed in part, reversed in part and remanded for entry of judgment in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

19