Marriage of Berg
Decided Feb. 24, 1998
(NOT TO BE CITED AS AUTHORITY)

No. 97-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 38N

IN RE MARRIAGE OF
PIA DEE BERG,

Petitioner and Respondent,

and

GEORGE W. BERG,

Respondent and Appellant.

APPEAL FROM:   District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary S. Deschenes, Deschenes Law Office,

Great Falls, Montana

For Respondent:

C. W. Leaphart, The Leaphart Law Firm,

Helena, Montana

Submitted on Briefs: February 5, 1998

Decided:   February 24, 1998

Justice Jim Regnier delivered the opinion of the Court.

¶1   Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2   Appellant George W. Berg appeals the decision of the Tenth Judicial District Court, Fergus County, dissolving his marriage to respondent Pia Dee Berg and dividing their marital estate.  We affirm.

¶3   We address the following issues on appeal:

¶4   1.   Did the District Court err in its valuation of the marital estate?

¶5   2.   Did the District Court err in its distribution of the marital estate?

¶6   3.   Did the District Court err by imputing income to George in the determination of his child support obligation?

FACTUAL AND PROCEDURAL BACKGROUND

¶7   George and Pia were married on August 19, 1975, in Elko, Nevada.  The parties moved to Lewistown, Montana, and founded the Berg Lumber Company, which George continues to run.  They had five children together, three of whom were minors at the time of trial in November 1996.  During their marriage, Pia was the primary care giver to their five children, and participated, along with George, in the operation of the sawmill.

¶8   Pia executed a petition for dissolution of marriage on September 7, 1990, and subsequently filed the petition on September 22, 1992, in Jefferson County, Montana. Although experiencing intermittent marital difficulties, the parties remained together until Pia filed her petition for dissolution in September 1992. Following a change of venue and a number of procedural delays, the court conducted a dissolution hearing on January 3, 1996. On January 4, 1996, the court issued its preliminary findings of fact, conclusions of law, and decree of dissolution.  The court additionally set a trial date of July 17, 1996, following which time the court would reach a final decision with respect to property division, maintenance, permanent child support, and attorney fees and costs.  After additional delays, the parties convened for trial on November 13 and 14, 1996.  The court held a supplemental hearing on December 19, 1996, and entered its amended findings of fact, conclusions of law, and final judgment on May 1, 1997.  George filed a motion for new trial and motion to alter or amend the judgment, which the court denied in a June 18, 1997, order.

¶9   It is from the court's May 1, 1997, findings of fact, conclusions of law, and final judgment, as well as from the court's order denying his motion for new trial and motion to alter or amend the judgment, that George presently appeals.

ISSUE 1

¶10  Did the District Court err in its valuation of the marital estate?

¶11   The district court has broad discretion in valuing the marital estate in a dissolution proceeding, and may adopt any reasonable valuation of marital property which is supported by the record. In re Marriage of Meeks (1996), 276 Mont. 237, 242-43, 915 P.2d 831, 834-35.  This Court will not disturb the district court's findings unless clearly erroneous.  Meeks, 276 Mont. at 242, 915 P.2d at 834.

   A.   Workers' Compensation Bill

¶12   On appeal, George argues the District Court made several errors in valuing the marital estate, the first of which George asserts was the court's decision to exclude from its valuation a $1,000,000 liability owed to the State Compensation Insurance Fund.  In its findings of fact, the court noted that the State Compensation Insurance Fund had billed George and Berg Lumber Company for $1,043,954, based upon audit premiums for the period of time from June 20, 1991 through August 27, 1994.  The court determined the liability was merely a contingent one, however, and ultimately chose to exclude the liability from its valuation of the marital estate.  The court observed that the amount owing "is disputed by George and no doubt will become the subject of litigation," and noted that "final resolution of the" billing was unknown at the time of trial.  In its order denying George's motion for a new trial, the court additionally explained that absolutely no evidence was provided to the Court relating to

that particular lien and its enforceability.  Rather,

George simply requested the Court to assume it was valid

in full and grant him an extra million dollars in assets

to offset the lien.  At trial, not only was there no

evidence as to the enforceability of the lien, there was

equally a complete absence of evidence relating to any

efforts made by George to determine its validity prior to

trial.

¶13  George argues the court erred in determining the liability is contingent, noting that the  bill is still outstanding and that, "as of yet, there is no evidence to establish that the bill is in error."  Having reviewed the record, however, we conclude the District Court's determination that the liability was merely a contingent one at the time of trial was not clearly erroneous.  Accordingly, we conclude the court did not err in excluding that contingent liability from its valuation of the marital estate.

¶14  We additionally note that, faced with distributing a gross marital estate worth in excess of $4,000,000, the court awarded Pia roughly $1,124,425 in assets and liabilities.  The court thus left the bulk of the marital estate to George in the form of the Berg Lumber Company.  As the court observed, "George was in complete control of the sawmill operation during [the] period of time" upon which the workers' compensation bill was based.  We conclude that for the court to determine that, because "George will receive nearly all of the assets" he would in turn "be responsible for nearly all of the liabilities, including the contingent liability owed to the State Compensation Insurance Fund," was not an abuse of discretion, particularly in light of the fact that he was in complete control of the sawmill operation during the period of time upon which the bill was based.

        B.   Time of Valuation

¶15  George next argues the court erred in valuing the marital estate at the time of the parties' January 1, 1996, dissolution, rather than at the approximate time of trial in the fall of 1996.  More specifically, George asserts the court should have determined the value of the marital assets and liabilities as of October 31, 1996, because that date was closer to the trial date on property distribution than was the January 1, 1996, date of dissolution

relied upon by the District Court. George argues that, due to a downtrend in the logging industry, the value of the marital estate decreased, and various liabilities increased, in the months following the dissolution of the parties' marriage on January 1, 1996. George notes that, because a number of appraisals had yet to be completed at the time of the dissolution hearing in January 1996, the court had to order a subsequent trial to address the valuation and division of marital property. George asserts this delay was not his fault alone, and argues there exist unusual circumstances in this case which mandate that the court look to a date other than the date of dissolution to value the marital estate.

¶16 Absent unique circumstances, the marital estate should be valued at or near the time of dissolution. See, e.g., In re Marriage of Lopez (1992), 255 Mont. 238, 244, 841 P.2d 1122, 1125. Having reviewed the record, we conclude there exist no special circumstances in this case which would warrant a deviation from the general rule that the marital estate should be valued at the time of dissolution. Moreover, we note, as did the District Court, that it was indeed due in large part to George's dilatory tactics that the parties were not prepared to proceed to trial on the issue of property settlement until ten months after the date of dissolution. For example, the record indicates that George failed to comply with a number of scheduling orders, and that he repeatedly requested that the court delay the trial in this case. Based on the foregoing, we conclude the District Court did not err in valuing the marital estate at the time of the January 4, 1996, dissolution decree.

C. Commercial Timber

¶17 George also argues the court erred in valuing commercial timber on the parties' property separately from the real property itself, and in including its value in the marital estate. George urges that, pursuant to Montana law, live trees are considered a part of real property, and argues that their value was included in real estate appraiser John Wicks' property appraisal. George points to that portion of Wicks' testimony in which he states that

he included the value of the timber in his appraisal, and argues the court thus erred in placing an additional value on the property for the commercial timber in the amount of $880,089. George next argues that, even if the court properly concluded that commercial timber could have been removed without harming the value of the land upon which it sat, the court relied on erroneous numbers in determining the value of that commercial timber.

¶18  In ultimately deciding to value standing timber separately from real property, the court relied in part upon testimony from expert John Wells in which he opined that the standing timber alone had a clear cut value of $2,673,948 and that the property had commercial timber with an optimal cut value of $1,760,178. Moreover, the court noted that, although Wicks had included the value of standing timber in his appraisal, he opined that up to 50 percent of the merchantable timber could likely be harvested without reducing the land's value.  Following a review of the record, we conclude the court did not err in valuing the standing timber separately from the land upon which it stood, and in finding that "the standing timber owned by the parties on their real properties has a value in excess of the appraised value set forth in Wicks' appraisal."

¶19  Although George argues the court relied on erroneous numbers in determining the value of that timber, we again note that the district court has broad discretion in valuing the marital estate in a dissolution proceeding, and may adopt any reasonable valuation of marital property which is supported by the record.  Meeks, 276 Mont. at 242-43, 915 P.2d at 834-35.  Here, the court's valuation of the timber is supported by sufficient evidence of record, and is not clearly erroneous.

        D.   Reduction for Lack of Access

¶20  Finally, George argues the court erred in determining not to reduce the value of certain real property due to lack of access. More specifically, George argues that because the Red Hill property is landlocked, the court erred in determining not to reduce the

land's value by 30 percent to account for lack of access. George points to expert testimony from Wicks in which he opined that lack of access would affect the value of the Red Hill property, and concluded that a $36,000 reduction in its value would be appropriate.

¶21 The court ultimately chose not to reduce the value of the Red Hill property by 30 percent, finding that "even without legal access, George has been able to harvest approximately 800,000 board feet of timber off 140 acres at a value of at least $80,000, and he still owns the real property and remaining timber." Having reviewed the record, we conclude the court did not err in finding it unnecessary to reduce the value of the Red Hill property due to lack of access.

### ISSUE 2

¶22 Did the District Court err in its distribution of the marital estate?

¶23 We review a district court's division of marital property to determine whether its findings of fact are clearly erroneous. In re Marriage of Hogstad (1996), 275 Mont. 489, 496, 914 P.2d 584, 588. If substantial credible evidence supports the district court's findings and judgment, we will not disturb its decision absent an abuse of discretion. Hogstad, 275 Mont. at 496, 914 P.2d at 588. We review a district court's conclusions of law relating to the division of marital property to determine whether those conclusions are correct. In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219-20.

A.   Liquidation Costs

¶24 George argues the District Court erred in failing to consider liquidation costs in its distribution of the marital estate. George asserts that both parties have acknowledged that there can be no distribution without liquidation of assets, and that liquidation would be necessary to meet outstanding liabilities,

including the workers' compensation bill discussed above. George thus argues the court abused its discretion by failing to consider liquidation costs in its distribution of the marital estate.

¶25 As Pia argues, however, the court awarded her property, in the form of real estate and timber, thereby devising a property distribution pursuant to which no liquidation appears necessary. In its order denying George's motion for a new trial, the court specifically stated that it did not consider liquidation costs in arriving at its decision because the record contained absolutely no evidence that "George intended to liquidate any assets in satisfaction of sawmill liabilities." Rather, the court noted, "the evidence is clear [that] George intends to continue to operate the Berg sawmill as he is doing today," and that "[l]iabilities will be paid from the profits of the sawmill as they have been in the past." Having reviewed the record, we conclude the District Court did not abuse its discretion in deciding not to consider liquidation costs in its distribution of the marital estate.

B.    Properties Acquired During Separation

¶26 George contends the court erred by including properties acquired during the parties' separation in the value of the marital estate. More specifically, George asserts the court erred in including the Red Hill property, purchased in January 1990, and the Lewistown Stafford Addition, purchased in 1992. George additionally argues the court erred in including in the marital estate a number of properties purchased in 1993. George asserts that, because he acquired these properties following the parties' separation, which he alleges occurred prior to January 1992, the court erred in including their value in the marital estate and including them in the property distribution.

¶27 Although George argues he and Pia separated prior to 1992, the court specifically found otherwise, noting that Pia did not move permanently from the family home until 1992. The Red Hill property was acquired in 1990, well prior to the parties' separation. Accordingly, we conclude the court did not err in considering it a

part of the marital estate.

¶28  To determine whether the court erred in including property acquired after the parties' separation in 1992 in the marital estate, we turn to the provisions of Sec. 40-4-202, MCA, which controls the division of property in dissolution proceedings. Section 40-4-202(1), MCA, specifically provides that:
In a proceeding for dissolution of a marriage . . . the court,

   without regard to marital misconduct, shall . . . finally

   equitably apportion between the parties the property and

   assets belonging to either or both, however and whenever

   acquired and whether the title thereto is in the name of

   the husband or wife or both.

(Emphasis added.)

¶29  Pursuant to the specific terms of Sec. 40-4-202, MCA, and in light of the fact that George has pointed to no authority to the contrary, we conclude the court did not err in including properties acquired following the parties' separation in 1992 in its distribution of the marital estate.

### ISSUE 3

¶30  Did the District Court err by imputing income to George in the determination of his child support obligation?

¶31  We review a district court's award of child support for an abuse of discretion.  In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384.

¶32  On appeal, George argues the court abused its discretion in imputing income to him in the amount of $50,000 per year for the purposes of determining his child support obligation.  Two of the parties' five children, both minors, reside with Pia.  Although George does not take issue with the custody arrangement, he does dispute the court's determination that he pay a total of $996 in child support each month. George asserts that his actual income is roughly $12,000 per year, rather than the $50,000 imputed by the court, and that he should thus be required to pay a total of only $40 per month in child support.

¶33  In calculating George's child support obligation, the court reviewed the parties' income tax returns for the years 1988 through 1995, and found that they "reflect[ed] a much greater income for George than he is projecting for child support purposes."  The court thus found "that through the sawmill and ancillary income producing assets (including yaks and leased property) owned by George, it [would] impute income of $50,000 per year for purposes of child support calculations."

¶34  Moreover, in its order denying George's motion for a new trial, the court again explained that, in calculating child support, it had carefully analyzed all of the tax returns submitted to the

Court and noted many unusual deductions in addition to

depreciation and Sec. 179 deductions.  The Court also was

aware, through testimony, that George essentially pays

all of his bills from the sawmill including his personal

legal fees.  This is a sawmill that generates from 3-4

million dollars in annual income.

¶35 Having reviewed the record, we conclude the court did not abuse its discretion in imputing $50,000 of annual income to George, and in ordering him to pay a total of $996 per month in child support.

¶36 Affirmed.

/S/ JIM REGNIER

We Concur:
/S/ J. A. TURNAGE
/S/ WILLIAM E. HUNT, SR.
/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER